IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Clarksburg Division

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

    Plaintiff,

v.                                                CASE NO. 5:11-CV-90

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and
UTC FIRE AND SECURITY AMERICAS CORP., INC.,

    Defendants.

## Memorandum in Support of
## Plaintiff's Motion for Partial Summary Judgment

John W. Barrett
Jonathan Marshall
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760

# Table of Contents

Question Presented ..................................................................................................... 1

Argument Summary .................................................................................................... 1

Background ................................................................................................................. 2

Short and Plain Statement of Undisputed Facts ....................................................... 3

Summary Judgment Standard .................................................................................... 7

Argument .................................................................................................................... 8

A.  Because VMS has no signed, written agreement from the Plaintiff to receive telemarketing calls from VMS, Plaintiff is entitled to summary judgment with respect to VMS's consent defense. ........................................................................ 8

    1.  Applicable Law ................................................................................................. 9

    2.  Plaintiff is entitled to partial summary judgment with respect to VMS's consent defense because VMS has no signed, written agreement from Ms. Mey authorizing VMS to contact her. ................................................................... 10

    3.  The "survey" call at issue here is not exempt from the TCPA. ................... 11

Conclusion ................................................................................................................. 12

# Table of Authorities

**Cases**

*All Am. Painting, LLC v. Financial Solutions & Assocs., Inc.*, 315 S.W.3d 719, 724 (Mo. 2010) .................................................................................................................. 10

*Anderson v.. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ................................................ 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .............................................................. 7

*Covington & Burling v. Int'l Mktng. & Research, Inc.*, No. 01-0004360, 2003 WL 21384825 (D.C. S. Ct. April 17, 2003) ................................................................... 10

*Diedrich v. Wright*, 550 F. Supp. 805, 806 (D. Ill. 1982) .................................................... 8

*Fed. Savs. & Loan Ins. Corp. v. Shelton*, 789 F. Supp. 1367, 1369 (M.D. La. 1992) ........... 8

*Grady v. St. Cloud Mtg.*, No. 484945, 2003 WL 21190993, *1 (Ohio Com. Pl. March 7, 2003) ................................................................................................................... 10

*Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886 (D. Fl. 1996) ................................................................................................... 8

*Jemiola v. XYZ Corp.*, 802 N.E.2d 745 (Ohio Com. Pl. 2003) ........................................... 10

*Laker Airways Ltd. v. Pan Am. World Airways*, 568 F. Supp. 811, 812 (D. D.C. 1982) ... 8

*Margulis v. P&M Consulting, Inc.*, 121 S.W.3d 246 (Missouri Appeals, 2003) ............... 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .......... 7

*Sterling Bank v. Sterling Bank & Trust*, 928 F. Supp. 1014 (D. Cal. 1996) ....................... 8

*URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ.*, 915 F. Supp. 1267, 1279 (D. R.I. 1996) ........................................................................................ 8

**Statutes**

47 U.S.C. § 227(c) .................................................................................................................. 9

47 U.S.C. § 227(c)(5) ............................................................................................................. 9

Telemarketing Act, 15 U.S.C. §§ 6101-6108 ........................................................................ 9

Telephone Consumer Protection Act, 47 U.S.C. § 227 ....................................................... 2

509918

**Other Authorities**

Biennial Report to Congress of the Federal Trade Commission Under the Do Not Call Registry Fee Extension Act of 2007 (Dec. 2011) .................................................. 2

Federal Practice and Procedure, § 2737 (3d ed. 1998) ....................................... 8

**Regulations**

47 C.F.R. § 64.1200(c) ........................................................................................ 9

47 C.F.R. § 64.1200(c)(2)(ii) ................................................................. 1, 10, 11

Rules & Regulations Implementing the TCPA of 1991, Junk Fax Prevention Act of 2005, 21 FCC Rcd. 3787, 3812 (2006) ................................................................ 10

Rules and Regulations Implementing the Telephone Consumer Prot. Act. of 1991, 7 FCC Rcd. 8752, 8774 (1992) ............................................................................. 11

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Report and Order, 18 FCC Rcd 14014, at 14043 ¶ 44, n. 157 (2003) ........................................................................................................... 10

Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Notice of Proposed Rulemaking, FCC 10-18 at 7 (Jan. 22, 2010) ............................................................................................................. 10

Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Second Order on Reconsideration, 20 FCC Rcd 3788, 3804, ¶ 40 (2005) ....................................................................................................... 10

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14040 at n.141 (2003) ......................... 11

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (Congressional statement of findings) (codified at 47 U.S.C. § 227) ................... 9

509918

## Question Presented

Plaintiff Diana Mey has listed her home telephone number on the National Do Not Call Registry since 2003. Applicable law states that a telemarketer (or "seller") may only call a consumer listed on the DNC Registry if the seller has obtained "a signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii). Defendant Versatile Marketing Solutions, Inc. ("VMS"), made numerous telemarketing calls to Ms. Mey at her home number, but it never obtained written consent from her to receive those calls. Instead, VMS contends it obtained her "verbal consent" through a "safety survey" conducted by a third-party lead generator, the purpose of which—by VMS's own admission—was to generate telemarketing sales for VMS. When viewed in the light most favorable to VMS, can VMS's "verbal consent" defense bar the Plaintiff's TCPA claims in this case?

## Argument Summary

Simply stated, VMS's "verbal consent" defense is no defense at all. It is undisputed (1) that Ms. Mey has been a federal DNC Registry subscriber since 2003, (2) that VMS telemarketers placed numerous calls to Ms. Mey on her home telephone line, and (3) that VMS never received a signed, written agreement from Ms. Mey to receive calls from VMS. Under these facts, the absence of a signed, written agreement from Ms. Mey is fatal to VMS's "verbal consent" defense—a defense that appears nowhere in the applicable provisions of the TCPA or the related Federal Communication Commission regulations. Accordingly, Plaintiff is entitled to partial summary judgment with respect to VMS's consent defense.

## Background

This case involves allegations of widespread abusive telemarketing practices by the defendants VMS, Monitronics International, Inc., and UTC Fire and Security Americas Corp., Inc. ("UTC" or "GE"). As alleged in the Amended Complaint, Defendant VMS, hoping to sell Plaintiff Diana Mey an alarm system and monitoring services she neither wanted nor needed, placed more than three dozen telemarketing calls to Ms. Mey, despite the fact she had listed her number on the DNC Registry. Am. Compl. ¶ 1. VMS placed these calls on behalf of UTC and Monitronics, for whom it was an authorized dealer of alarm systems and monitoring services, respectively. *Id.* Under the TCPA, each of the three companies is liable for the illegal calls made.

As detailed below, the DNC Registry was enacted in 2003, and applicable law prohibits telemarketers from calling consumers whose numbers are listed on the Registry. There are more than 200 million active subscribers to the Registry. *See* Fed. Trade Comm'n, Biennial Report to Congress of the Federal Trade Commission Under the Do Not Call Registry Fee Extension Act of 2007 (Dec. 2011). Since 2003, Ms. Mey has been among them. Nonetheless, over the past two years Ms. Mey has received dozens of calls from or on behalf of the Defendants seeking to promote the Defendants' home security goods and services.[1] Am. Compl. ¶ 1. Ms. Mey alleged that this conduct violates the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, and commenced this putative nationwide class action under provisions authorizing private citizens to bring suit against violators of the TCPA, *see id.* § 227(c)(5).

---

[1] Ms. Mey is not alone. Prior to filing suit, class counsel obtained from the Federal Trade Commission, one of the federal agencies charged with enforcement of the DNC Registry, over 1,400 pages of consumer complaints relating to VMS telemarketing to consumers listed on the DNC Registry.

509918

VMS claims that Ms. Mey consented to receive the phone calls at issue by participating in a "safety survey" conducted by a VMS sub-agent called Total Survey Solutions, Inc., or TSS, a sales-lead generation company based in New Delhi, India. As explained below, and as a matter of law, VMS's claim of verbal consent is without basis in the TCPA, and Plaintiff is entitled to partial summary judgment.

### Short and Plain Statement of Undisputed Facts

Under Local Rule 7.02(a), Plaintiff provides the following short and plain statement of undisputed facts relevant to her motion:

1. VMS is a leading seller of security systems and alarm monitoring services, with approximately 200 employees in offices in Rhode Island and Dallas, Texas. *See* Ex. 1, at 11 (Gotra Dep. Nov. 29, 2011). Approximately sixty to seventy of these employees are telemarketers. *See id.* at 14.

2. As part of its telemarketing efforts, VMS purchases approximately 20,000 sales leads per month from an Indian company called Total Survey Solutions, Inc., or TSS, located in New Delhi. *See id.* at 20-21, 25.

3. TSS obtains sales leads it sells to VMS by calling consumers and asking them to complete a so-called "safety survey." *Id.* at 20-21. After TSS transmits the leads to VMS, VMS employees make sales calls to the prospective customers. *See id.* at 25-26.

4. Ms. Mey first received a "survey" call from TSS on November 16, 2009. A transcript of the call is attached as Exhibit 2 to Plaintiff's Motion; an audiotape of the call was produced in discovery. During the call, "Cherie from Monitronics" stated "this is not a sales call," and proceeded to ask Ms. Mey a series of questions about whether she had a smoke alarm, how often she checked the batteries, whether she owned a fire extinguisher, and finally, "What is your main concern for your home and family? Fire.

Break-ins. Medical Emergency. Or all of them." Ex. 2. Cherie spoke heavily-accented English, and Ms. Mey had difficulty understanding her. They had the following exchange:

> Cherie: Okay. I just want to say that for participating in our survey you will receive GE Live security system no charge if you are selected. I will inform you the morning time. Thank you so much for your time and patience. You have a blessed evening, okay?
>
> Diana Mey ("DM"): I will get what?
>
> Cherie: You will receive GE Live security system no charge. If you are selected, I will inform you in the morning time. Thank you so much for your time and patience. You have a blessed evening, okay?
>
> DM: I still don't know what you said. You're gonna call me in the morning?
>
> Cherie: Yeah. I will inform you in the morning if you are selected you will receive GE Live security system security alarm system you will receive no charge. If you are selected, I will inform you in the morning time, okay?
>
> DM: What morning?
>
> Cherie: I will inform you in the morning if you are selected.
>
> DM: In the morning?
>
> Cherie: Yeah.
>
> DM: Tomorrow morning?
>
> Cherie: Yeah. I will inform you in the morning time. Okay?
>
> DM: Where are you calling from?
>
> Cherie: I'm calling you from Monitronics.
>
> DM: Monitronics?
>
> Cherie: Yeah.
>
> DM: What's the phone number there?
>
> Cherie: I don't have phone number.

4

509918

DM: Why not?

Cherie: Monitronics is the name of the company. This is not a sales call.

DM: It isn't? It sounds like one.

Cherie: I'm confirming you get the fire, that's it.

DM: You're confirming what?

Cherie: In case of fire.

DM: In case of fire?

Cherie: Yeah. So just for participating in our survey, you will receive GE live security system no charge. If you are selected, I will (beep sound heard) okay?

DM: What was that? What was that beep? Hello? Hello? Hello? Hey where'd you go? Hello? Hello? Hello?

(Dial tones heard)

*Id.* VMS contends this call constitutes Ms. Mey's consent to receive telemarketing calls from VMS.

5.   On December 14, 2009, a VMS telemarketer placed a call to Ms. Mey. A transcript of the call is attached to Plaintiff's Motion as Exhibit 3; an audio recording of the call was produced in discovery.

6.   During the December 14 call, a man who identified himself as "Frank . . . from General Electric" told Ms. Mey that "GE has selected you to receive a new GE wireless home security system at no charge," and that "all of the fees are being waived" because Ms. Mey's number was "randomly selected." Ex. 3. Later in the call "Frank" told Ms. Mey he worked for Monitronics, which he said was located in Providence, Rhode Island – where VMS is located. *Id.* In fact, "Frank" was an employee of VMS.

5

7. This call was generally consistent with the survey script used by VMS telemarketers, attached as Exhibit 4 to Plaintiff's motion. The script states that VMS is making the call because "recently you participated in our Home Safety Survey and that survey was selected to receive ONE OF OUR 1,200 dollar General Electric wireless security systems and the installation all for No Cost to you.  SO CONGRATULATIONS!!!" Ex. 4.

8. Ms. Mey received another survey call from TSS on at least one other occasion, including March 17, 2011. *See* Ex. 1 at 28. The calls were similar to the November 16, 2009 call from Cherie. A copy of the survey purportedly pertaining to TSS's call presented to Ms. Mey is attached as Exhibit 5 to Plaintiff's Motion. *See id.* at 127.

9. VMS's Rule 30(b)(6) designee, VMS owner Jasit Gotra, acknowledged at his deposition that that the purpose of the TSS "survey" was "to generate a lead for a home security system[.]" *Id.* at 135. He did not know whether the "survey" results were ever tallied and sent to anyone. *Id.*

10. Mr. Gotra attempted to explain the factual basis for VMS's "survey consent" defense. He stated that VMS called Ms. Mey to attempt to sell her a security system because Ms. Mey "opted in" or consented to receive such calls by participating in the TSS "survey."

> Q. Okay, and with respect to Ms. Mey, I believe VMS said that they had consent from her to send – to call her?
> A. It's an opt-in data, yes.
> Q. And can you tell me what the opt-in data is?
> A. In the form for – for this particular case, she had taken part in a survey.

*Id.* at 20.

6

509918

11. Mr. Gotra testified that VMS requires that TSS represent to it that all leads it provides to VMS provided "verbal consent" to receive a telemarketing call. *Id.* at 22, 25; *see also id.* at 135 (referencing VMS's "[v]erbal confirmation of a customer that we're calling regarding a security system").

12. The survey that VMS contends constitutes the consent to receive a telemarketing call was provided to Ms. Mey exclusively over the phone. *See id.* at 21. There is nothing in writing about the survey and nothing signed by Ms. Mey to indicate her consent to receive telemarketing calls from VMS. *See Id.*

13. VMS's Answer to the Amended Complaint states, "Plaintiff's claims against VMS are barred by her consent to be contacted by VMS." Answer, Affirmative Defenses, ¶ 15.

14. Ms. Mey has listed her telephone number on the DNC Registry since 2003. *See* Ex. 6 at 77 (Mey Dep., Dec. 30, 2011).

**Summary Judgment Standard**

Under Rule 56, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). Consideration of a motion for summary judgment requires that the Court review all evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of nonmovant is to be believed, and all justifiable inferences must be drawn in his favor." (internal quotation marks omitted)); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

7

A court may grant a partial summary judgment on an affirmative defense. *See* Charles Allen Weight, Arthur R. Miller, Mary Kay Kayne and Richard L. Marcus, Federal Practice and Procedure, § 2737 (3d ed. 1998); *see also Sterling Bank v. Sterling Bank & Trust,* 928 F. Supp. 1014, 1018 (C.D. Cal. 1996); *Laker Airways Ltd. v. Pan Am. World Airways,* 568 F. Supp. 811, 812 (D.D.C. 1982); *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.,* 944 F. Supp. 886, 891 (D. Fl. 1996); *Diedrich v. Wright,* 550 F. Supp. 805, 806 (D. Ill. 1982); *Fed. Savs. & Loan Ins. Corp. v. Shelton,* 789 F. Supp. 1367, 1369 (M.D. La. 1992); *URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ.,* 915 F. Supp. 1267, 1279 (D.R.I. 1996).

## Argument

### A. Because VMS has no signed, written agreement from the Plaintiff to receive telemarketing calls from VMS, Plaintiff is entitled to summary judgment with respect to VMS's consent defense.

VMS's defense that Ms. Mey consented to receive calls from VMS by answering the TSS survey questions is no defense at all under the TCPA. As is apparent from the plain terms of the TCPA and its regulations, telemarketers may call a consumer whose number is listed on the DNC Registry only if the telemarketer has a signed, written agreement from the consumer to receive calls from the telemarketer. Indisputably, VMS has no such agreement. Accordingly, Plaintiff is entitled to summary judgment with respect to VMS's consent defense.

509918

### 1. Applicable law

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (Congressional statement of findings) (codified at 47 U.S.C. § 227).

In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, which was later amended in 2003. Among other things, the amended TSR established the DNC Registry. The DNC Registry lists the telephone numbers of consumers who have informed the FTC that they do not wish to receive certain types of telemarketing calls.

The TCPA prohibits persons or entities from initiating telephone solicitations to registered telephone subscribers. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). A person whose number is on the Registry, and who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. *See* 47 U.S.C. § 227(c)(5).

Critically for purposes of this motion, TCPA regulations include a safe harbor provision that exempts from liability a person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) who have express, written permission to make the call. Specifically, the regulations exempt a seller from TCPA liability if the seller

> has obtained the subscriber's prior express invitation or permission. Such permission **must be evidenced by a signed, written agreement between the consumer and seller** which states that the consumer

agrees to be contacted by this seller and includes the telephone number to which the calls may be placed.

47 C.F.R. § 64.1200(c)(2)(ii) (emphasis added).[2]

It is settled law that a telemarketer who asserts a consent defense in response to an alleged violation of the TCPA bears the burden of proof. *See Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. 01-0004360, 2003 WL 21384825, at *5 (D.C. S. Ct. April 17, 2003); *All Am. Painting, LLC v. Fin. Solutions & Assocs., Inc.*, 315 S.W.3d 719, 724 (Mo. 2010) (citing In the Matter of Rules & Regulations Implementing the TCPA of 1991, Junk Fax Prevention Act of 2005, 21 FCC Rcd. 3787, 3812 (2006); *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 749 (Ohio C.P. 2003); *Grady v. St. Cloud Mtg.*, No. 484945, 2003 WL 21190993, at *1 (Ohio C.P. April 7, 2003).

### 2. Plaintiff is entitled to partial summary judgment with respect to VMS's consent defense because VMS has no signed, written agreement from Ms. Mey authorizing VMS to contact her.

VMS's consent defense rests completely on the purported "verbal consent" Ms. Mey provided when she spoke with TSS representatives regarding the so-called "safety

---

[2] *See also* Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Notice of Proposed Rulemaking, FCC 10-18 at 7 (Jan. 22, 2010), available at http://www.fcc.gov/document/Rules-and-regulations-implementing-telephone-consumer-protection-act-1991. ("Under the [Federal Communications] Commission's TCPA rules and orders, prior express consent of a residential telephone subscriber to receive a . . . live telephone solicitation must be in writing if the subscriber's number is listed on the national do-not-call registry, but may be obtained orally or in writing if the subscriber's number is not listed on the registry."(citing Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Second Order on Reconsideration, 20 FCC Rcd 3788, 3804,¶ 40 (2005) ("Absent a consumer's listing on the national do-not-call registry, [] prior express consent to deliver a lawful prerecorded message may be obtained orally."), and Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Report and Order, 18 FCC Rcd 14014, at 14043 ¶ 44, n. 157 (2003) (discussing prior express permission required for consumers who have registered their numbers on the do-not-call Registry)).

survey." As is clear from 47 C.F.R. § 64.1200(c)(2)(ii), there is no verbal consent defense in the TCPA. Consent to receive telemarketing calls must be in writing, and signed by the consumer, and must unambiguously state that the consumer agrees to be contacted by the telemarketer. VMS admits it has no signed writing, and admission that makes clear the Plaintiff is entitled to summary judgment on the issue of consent.

### 3. The "survey" call at issue here is not exempt from the TCPA.

VMS may claim that the TCPA exempts "survey" calls such as the "safety survey" calls to Ms. Mey. This claim also fails. It is true that the TCPA has long recognized that **non-commercial calls**, including calls conducting research, market surveys, political polling or similar activities which do not involve solicitations are exempt from the scope of the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Prot. Act. of 1991*, 7 FCC Rcd. 8752, 8774 (1992). The FCC, however, perhaps anticipating the tactics at issue here, long ago recognized that "a call encouraging a purchase, rental or investment" would still be subject to the TCPA even if it purports to be a "poll" or "survey." *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14040 at n.141 (2003) (quoting H. R. Rep. No. 102-317 at 13) (internal quotation marks omitted).

Similarly, the FCC has long recognized that in determining whether a particular telemarketing call constitutes an "advertisement" or a "telephone solicitation" subject to the TCPA, the key determining factor is not the "caller's characterization of the call" but, instead turns on "the purpose of the message." *See id.* at 14098. Accordingly, to qualify for this exemption, VMS would have to establish that the true purpose of the "survey" call at issue was "non-commercial." *See Margulis v. P&M Consulting, Inc.*,

11

509918

121 S.W.3d 246, 249-51 (Mo. Ct. App. 2003) (rejecting a telemarketer's claim that a call promoting travel packages was a "survey" exempt from the TCPA).

That the "survey" call made to Ms. Mey by TSS was a mere pretext to disguise the call's true commercial purpose cannot be disputed. In fact, VMS agreed in deposition testimony that the purpose of the "survey" was "to generate a lead for a home security system[.]" Ex. 1 at 135. It cannot be disputed, therefore, that the "purpose" of the survey call to Ms. Mey was commercial in nature and was intended to generate home security leads. Accordingly, any claim by VMS that the "survey" call is somehow exempt from the scope of the TCPA must fail.

## Conclusion

For these reasons, Plaintiff requests the Court grant her motion.

Respectfully submitted.

Plaintiff Diana Mey,<br>
By Counsel.

*/s/ John W. Barrett*
John W. Barrett, Esq.
Jonathan Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Edward A. Broderick, Esq.
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 314-7783 *facsimile*
ted@broderick-law.com

509918

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
(508) 319-3077
(508) 655-1415 *facsimile*
mmccue@massattorneys.net

509918

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Clarksburg Division

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

    Plaintiff,

v.                                    CASE NO. 5:11-CV-90

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and
UTC FIRE & SECURITY AMERICAS CORPORATION, INC.,

    Defendants.

### Certificate of Service

I hereby certify that on January 31, 2012, I served ***Plaintiff's Memorandum in Support of Her Motion for Partial Summary Judgment*** using the CM/ECF system, which will send notification to Defendants' counsel of record:

    Jeffrey A. Holmstrand
    Phillip T. Glyptis
    Flaherty Sensabaugh & Bonasso PLLC
    1225 Market Street
    Wheeling, WV 26003
    jholmstrand@fsblaw.com
    pglyptis@fsblaw.com

    William D. Wilmoth
    Kristen L. Andrews
    Steptoe & Johnson PLLC
    Post Office Box 751
    Wheeling, WV 26003
    william.wilmoth@steptoe-johnson.com
    Kristen.Andrews@Steptoe-Johnson.com

509918

Niall A. Paul
Clifford F. Kinney, Jr.
John R. Teare, Jr.
Spilman Thomas & Battle PLLC
300 Kanawha Boulevard, East
Charleston, WV 25321
NPaul@spilmanlaw.com
ckinney@spilmanlaw.com
jteare@spilmanlaw.com

Christina S. Terek
Spilman Thomas & Battle, PLLC
1217 Chapline Street
P.O. Box 831
Wheeling, WV 26003
cterek@spilmanlaw.com

/s/ John W. Barrett
John W. Barrett, Esq.

509918