# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

### Clarksburg Division

**DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,**

    **Plaintiff,**

**v.**                                          **CASE NO. 5:11-CV-90**

**MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and
UTC FIRE AND SECURITY AMERICAS CORP., INC.,**

    **Defendants.**

### Plaintiff's Memorandum in Opposition to Defendant Versatile Marketing Solutions, Inc.'s Motion for Summary Judgment

John W. Barrett
Jonathan Marshall
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02111

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760

517371.a02

# Table of Contents

Argument Summary.................................................................................................1

Background and Statement of Undisputed Facts................................................ 2

Summary Judgment Standard............................................................................. 2

Argument............................................................................................................. 3

A.   VMS's "verbal consent" defense is based upon the wrong statute; verbal consent is no defense to Plaintiff's claims...... ....................................... ......................................3

B.   Because of the manner in which discovery was bifurcated, Plaintiff has had no opportunity to conduct full discovery on safe harbor issues, and therefore summary judgment on those issues is premature. ................................................... 5

C.   Whether VMS or its third-party lead generator placed the calls is irrelevant for purposes of summary judgment............................................................... 8

    1.   The fact that some of the calls were placed by TSS, not VMS, does not entitle VMS to summary judgment............................................................... 9

    2.   Liability under § 227(c) extends to the entities on whose behalf an illegal telemarketing call is made. .............................................................. 10

D.   VMS's remaining grounds for summary judgment are without merit.... .................14

Conclusion.........................................................................................................15

# Table of Authorities

## Cases

*Accounting Outsourcing, LLC. v. Verizon Wireless Personal Commc'ns, L.P.*, 329 F. Supp. 2d 789, 818 (M.D. La. 2004) ................................................................11

*Anderson v.. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ...................................3

*CE Design Ltd. v. Prism Bus. Media, Inc.*, No. 07-c-5838, 2009 WL 2496568, at *3 (N.D.Ill. Aug. 12, 2009) ...........................................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)...............................................3

*Charvat v. Echostar Satellite,* 630 F.3d 459 (6th Cir. 2010) ...............................13

*Charvat v. Echostar Satellite, LLC*, 676 F. Supp. 2d 668 (S.D. Ohio 2009) ......13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).........3

*Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004).................................................................................11

*Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) ......................11

*United States v. Credit Bureau Collection Services*, No. 2:10-cv-169 (S.D. Oh. Feb. 24, 2010) ...............................................................................14

## Statutes

47 U.S.C. § 227(b)...........................................................................1, 3, 4, 11

47 U.S.C.§ 227(b)(1)(A) ....................................................................................4

47 U.S.C.§ 227(b)(1)(B) ....................................................................................4

47 U.S.C.§ 227(b)(1)(C) ....................................................................................4

47 U.S.C. § 227(c) ..................................................................1, 2, 4, 5, 6, 10, 14

47 U.S.C. § 227(c)(5)....................................................................2, 4, 5, 6, 10

517371.a02

**Rules**

Federal Rule of Civil Procedure 56 ......................................................................2

**Regulations**

47 C.F.R. § 64.1200(c) .......................................................................................... 2

47 C.F.R. § 64.1200(c)(2)(i) .................................................................................. 6

47 C.F.R. § 64.1200(c)(2)(ii) ...........................................................................1, 2, 5

**Other Authorities**

In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991, Memorandum Opinion and Order, 10 F.C.C.R. 12391 at ¶ 13
    (Aug. 7, 1995) .............................................................................................. 11

In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling,
    CG 02-278, 23 F.C.C.R. 559 at ¶ 10  (Jan. 4, 2008) ...................................... 11

In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991, Request of State Farm Mutual Auto. Ins. Co. for Clarification
    and Declaratory Ruling, CG Docket No. 02-278, 20 F.C.C.R. 13664 at ¶ 7 (Aug. 17,
    2005) ............................................................................................................ 11

Merriam Webster's Collegiate Dictionary 103 (10th ed. 1999).......................... 10

Webster's Third New Int'l Dictionary, 198 (2002)............................................. 10

517371.a02

## Argument Summary

Defendant Versatile Marking Solutions, Inc.'s ("VMS's") chief argument for summary judgment backfires, demonstrating that Plaintiff Diana Mey, not VMS, should receive summary judgment in her favor regarding the issue of consent.

VMS asserts that it is entitled to summary judgment because it contends that Plaintiff provided what VMS calls "verbal consent" to receive telemarketing calls from VMS. VMS's assertion fails at the outset because, inexplicably, VMS bases its argument on the wrong statute. While the Telephone Consumer Protection Act ("TCPA") provision that VMS relies on, 47 U.S.C. § 227(b), arguably authorizes verbal consent to receive telemarketing calls, § 227(b) relates to telemarketing through automated telephone equipment—conduct that is not at issue in this case. Plaintiff instead alleges violations of § 227(c), the provision that forbids telemarketing calls to persons who list their numbers on the federal Do Not Call Registry ("DNC Registry"). As demonstrated in Plaintiff's motion for partial summary judgment, a telemarketer may call a DNC registrant *only if* the telemarketer has a *signed, written agreement* from the registrant authorizing the telemarketer to place the call. 47 C.F.R. § 64.1200(c)(2)(ii). Oral consent is not enough. VMS has no written agreement from Ms. Mey authorizing the call, a fact that entitles the Plaintiff to summary judgment.

VMS's other grounds for summary judgment also lack merit. Its request for summary judgment on the "safe harbor" defense—an affirmative defense that requires a showing of compliance with policies and procedures that effectively prevent TCPA violations—must be denied because the Court's bifurcated discovery process has precluded Plaintiff from conducting full discovery regarding that defense. And VMS's effort to shield itself from TCPA liability because a third-party placed some of the calls

1

at issue is factually irrelevant for summary judgment purposes, and is rooted in a

fundamental misapprehension of applicable law.  For those reasons, the Court should

deny VMS's motion.

## Background and Statement of Undisputed Facts

In her memorandum in support of her motion for partial summary judgment,

Plaintiff established the relevant facts and applicable law.  To avoid duplication,

Plaintiff adopts and incorporates each of those matters and provides the following

summary:

- Plaintiff has listed her number on the Federal Trade Commission's DNC Registry since 2003.  (Pl.'s Mem. Supp. Partial Summ. J. 7, Docket No. 92).
- The TCPA prohibits persons or entities from initiating telephone solicitations to telephone subscribers listed on the DNC Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).  (Pl.'s Mem. 9).
- A person whose number is on the DNC Registry, and who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).  (Pl.'s Mem. 9).
- TCPA regulations exempt from liability a person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) if the telemarketer or "seller" "has obtained the subscriber's prior express invitation or permission.  Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed."  47 C.F.R. § 64.1200(c)(2)(ii).  (Pl.'s Mem. 9-10).
- VMS has no signed, written agreement from Ms. Mey to receive telemarketing calls from VMS.  (*Id.* at 7).

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is proper if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). Consideration of a motion for summary judgment requires that the Court review all evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences must be drawn in his favor" (internal quotation marks omitted)); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) ("[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion" (internal quotation marks omitted)). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of fact exist such that a trial is warranted. *See Anderson*, 477 U.S. at 248.

### Argument

### A.   VMS's "verbal consent" defense is based upon the wrong statute; verbal consent is no defense to Plaintiff's claims.

The misapprehension upon which VMS bases its summary judgment motion is neatly summarized in the heading of Section II of its brief, where it states, "Because Plaintiff provided verbal consent to the calls, her claims under 47 U.S.C. § 227(b) fail as a matter of law." (Def.'s Mem. Supp. Summ. J. 11, Docket No. 99). VMS fails to realize that Plaintiff asserts no claims under § 227(b), but rather asserts claims under § 227(c), which relates to violations of the TCPA's prohibition against telemarketing to

persons who list their telephone numbers on the DNC Registry. [1] And verbal consent is no defense under § 227(c).

Section 227(b), as its subsection heading indicates, relates to "[r]estrictions on use of automated telephone equipment." 47 U.S.C. § 227(b). Subsection (b)(1)(A) prohibits certain calls "using any automatic telephone dialing system or artificial or prerecorded voice[,]" none of which is involved in this case. *Id.* § 227(b)(1)(A). Subsection (b)(1)(B) prohibits so-called "robocalls," *i.e.*, calls "using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" *Id.* § 227(b)(1)(B). Robocalls also are not involved in this case. Subsection (b)(1)(C) relates to unsolicited messages sent to a telephone facsimile machine—again, conduct that has nothing to do with this case. *See id.* § 227(b)(1)(C).

Therefore, § 227(b), which supplies the entire basis of VMS's first summary judgment argument, is irrelevant to this case, which pertains exclusively to violations of federal DNC provisions and § 227(c). Specifically, Plaintiff alleged, in Count One, that "[e]ach Defendant negligently violated the TCPA by making telephone solicitations to persons and entities whose phone numbers were listed on the Do Not Call Registry, or by the fact that others made such calls on their behalf." First Am. Compl. ¶ 107; *see also id.* ¶¶ 1, 9-10, 24, 37, 86, 94-95, 111; Second Am. Compl. ¶ 72; *see also id.* ¶¶ 1, 9-10, 35-36, 43-45, 48, 52, 60-61, 74. Count Two alleged knowing violations of the DNC statute and regulations. First Am. Compl. ¶¶ 111-113; Second

---

[1] The First Amended Complaint asserted § 227(b) claims in Counts III and IV. (*See* Docket No. 13). However, at hearing on January 17, 2012, the Court orally granted Plaintiff's motion for leave to file a Second Amended Complaint, to which no Defendant objected. The Second Amended Complaint omits the § 227(b) claims, and was filed on February 17, 2012. (*See* Docket No. 100).

Am. Compl. ¶ 74.  Plaintiff also alleged that  person who has registered with the DNC registry must give signed, written consent to be contacted by the caller or seller in order for the caller or seller to avoid liability under the TCPA, and that Ms. Mey did not give such consent.  *See* First Am. Compl. ¶¶ 11-12, 94; Second Am. Compl. ¶¶ 11-13, 46, 60.

The fact that this is a § 227(c) claim is significant for purposes of determining consent to receive telemarketing calls.  As Plaintiff alleged, the regulations applicable to § 227(c) violations make clear that a telemarketer is exempt from liability only if the telemarketer "has obtained the subscriber's prior express invitation or permission.  Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed."  47 C.F.R. § 64.1200(c)(2)(ii).

VMS does not address these regulations at all in its summary judgment brief, presumably because VMS must acknowledge that it lacks the signed, written agreement necessary to revoke Plaintiff's longstanding directive that she not receive unsolicited telemarketing calls.  Because VMS has no such written agreement, the Court should grant Plaintiff's motion for partial summary judgment regarding consent, and deny VMS's motion.

**B.  Because of the manner in which discovery was bifurcated, Plaintiff has had no opportunity to conduct full discovery on safe harbor issues, and therefore summary judgment on those issues is premature.**

VMS's second asserted basis for summary judgment is that it is entitled to the "safe harbor" immunity of § 227(c)(5), because it claims to have policies and

procedures in place to ensure compliance with all applicable telemarketing laws. This argument fails because the Court's bifurcated discovery order precludes Plaintiff from conducting discovery necessary to rebut the defense, and therefore summary judgment on the defense is premature.

The safe harbor defense exempts a telemarketer from liability for DNC Registry violations if the alleged violation is the result of an error, and the telemarketer complies with practices and procedures designed to avoid such errors. More specifically, the defense exculpates a telemarketer from liability if

> [it] can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:
>     (A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
>     (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
>     (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;
>     (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

47 C.F.R. §64.1200(c)(2)(i); *see also* 47 U.S.C. § 227(c)(5) (providing that "[i]t shall be an affirmative defense in any action . . . that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection").

VMS asserted the safe harbor defense its answer to the First Amended Complaint. (VMS Answer, Affirm. Def. ¶ 7, Docket No. 18). Early in the litigation, when the parties could not agree regarding the scope of discovery, the Court directed

6

517371.a02

the parties to submit a report detailing their respective positions on that issue.  The
parties submitted this report on September 2, 2011.  (Joint Rep., Docket No. 27).

In the report, Plaintiff proposed conducting discovery aimed squarely at the
safe-harbor defense, including, *inter alia*:  (a) the actions taken by Defendants, and the
training of their employees and authorized marketers to ensure compliance with
telemarketing laws and corporate policies; (b) their monitoring of telemarketing
conducted by other Defendants, agents and contract partners to ensure compliance; (c)
their efforts to ensure that telemarketing calls are not placed to consumers who list
their numbers on the DNC Registry or otherwise make direct do-not-call requests to
the defendants; (d) the nature of consumer complaints received by the Defendants
regarding telemarketing; and (e) the steps to investigate and address those complaints.
(*See* Joint Rep. ¶¶ B.4, 5, 6, 8, & 9) (detailing Plaintiff's request for discovery on these
issues).

The Court then referred the discovery-scope dispute to Magistrate Judge Kaull,
who entered an order that authorized discovery regarding certain "on behalf of" TCPA
liability issues, but specifically rejected Plaintiff's request for the safe harbor-related
discovery during the initial discovery phase.  (Order Memorializing Order of Nov. 4,
2011 4, Docket No. 68) (stating Plaintiff  could obtain "no discovery" regarding the
items listed in Report ¶¶ B.4, 5, 6, 8, & 9).

Therefore, because of the bifurcated discovery process, Plaintiff has had no
opportunity at this initial phase of discovery to obtain complete information regarding

517371.a02

VMS's safe-harbor defense.  (Barrett Aff. ¶¶ 1 - 5, Exhibit 1).  Under the circumstances,

VMS's summary judgment motion on the safe harbor defense must be denied.[2]

### C.   Whether VMS or its third-party lead generator placed the calls is irrelevant for purposes of summary judgment.

VMS's next argument for summary judgment is futile both factually and legally.

VMS claims entitlement to summary judgment because TSS, the Indian company that

made the initial "survey calls" is purportedly an independent contractor, and TSS, not

---

[2] Regardless, the very limited information available to Plaintiff casts serious doubt on VMS's ability to sustain its safe-harbor defense.  This information includes:

- VMS relied completely on TSS to ensure that the calls TSS placed to consumers complied with the TCPA, *see* Ex. 1 to Pl.'s Mot. Partial Summ. J., at 17-18, 137, Docket No. 91 (Gotra Dep. Nov. 29, 2011);

- VMS apparently provided no training to TSS to ensure TCPA compliance, but instead relied on a contractual agreement purporting to require TCPA compliance, *see id.* at 19-20, 137;

- VMS conducted no due diligence to ensure that any "leads" forwarded by TSS were TCPA-compliant, and in fact believed "verbal consent" was sufficient to overcome a consumer's listing on the DNC Registry, *see id.* at 22, 137;

- VMS did not "scrub" leads provided by TSS against the DNC Registry during the time period of its calls to the Plaintiff, and stated it planned to scrub leads beginning January 1, 2012—just six weeks ago, *see id.* at 137-38;

- In July of 2010, the Attorney General for State of Pennsylvania entered into a settlement agreement with VMS, to resolve allegations that VMS was telemarketing GE Security systems to consumers on the Pennsylvania Do Not Call List, *see* First Am. Compl. ¶ 86; and

- A FOIA request to the Federal Trade Commission turned up more than 1400 pages of consumer complaints alleging receipt of unsolicited telemarketing calls from VMS, all of which have been disclosed in discovery.

517371.a02

VMS, placed the initial "survey call" to Ms. Mey.[3]  This argument fails for two reasons.
First, it is factually irrelevant.  VMS admits that it placed at least seven calls to the
Plaintiff; the fact that ***other*** calls were placed by TSS has no bearing on VMS's liability
and does not entitle it to summary judgment.  Second, VMS is legally wrong.  VMS's
liability under the TCPA does not depend on whether it physically placed illegal
telemarketing calls to the Plaintiff.  It is sufficient that another entity placed illegal calls
on VMS's behalf, as TSS has done here.

### 1.   The fact that some of the calls were placed by TSS, not VMS, does not entitle VMS to summary judgment.

Frankly, the significance of VMS's assertion that TSS, and not VMS, placed the
initial "survey call," is unclear.  VMS admits on page 4 of its brief that it placed at least
seven calls to the Plaintiff, (Def.'s Mem. Supp. Summ. J. 4), and does not dispute that
Plaintiff has listed her telephone number on the DNC Registry since 2003, (*see* Pl.'s
Mem. Supp. Partial Summ. J. 7, ¶ 14).  And there also is no dispute that VMS does not
have a signed, written agreement from Plaintiff authorizing VMS to place telemarketing
calls to her.  (*Id.* at 7, ¶ 12).  These undisputed facts preclude summary judgment to
VMS, and VMS's reference to TSS's role in making the initial "survey calls" invites
inquiry into matters that are irrelevant for summary judgment purposes.

---

[3] The "survey call" is an old telemarketing trick intended to establish defenses to § 227(b) claims—a ruse the FCC has expressly rejected.  *See* 2003 Report & Order, 26, ¶ 37, n. 41. ("[Survey] calls may be prohibited if they serve as a pretext to an otherwise prohibited advertisement or a means of establishing a business relationship.  Moreover, responding to such a 'survey' does not constitute express permission or establish a business relationship exemption for purposes of a subsequent telephone solicitation[.]").

517371.a02

### 2. Liability under § 227(c) extends to the entities on whose behalf an illegal telemarketing call is made.

Not only is VMS's argument factually irrelevant, it is legally incorrect, as well. When Congress enacted the TCPA, it anticipated that creative defendants would attempt to evade liability by using third parties to engage in illegal telemarketing for them. Therefore, the TCPA extends liability not only to the entity that physically dials the illegal call, but also to the entity that benefits from that call. Specifically, the provision that establishes a private right of action against an entity that violates the DNC restrictions provides:

> A person who has received more than one telephone call within any 12-month period ***by or on behalf of*** the same entity in violation of the regulations prescribed under this subsection may . . . bring in an appropriate court . . . . (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $ 500 in damages for each such violation, whichever is greater, or (C) both such actions.

47 U.S.C. § 227(c)(5)(emphasis added).

Whether or not a telephone solicitation is made "on behalf of" a particular entity does not require, as VMS contends, proof of an agency relationship. The ordinary meaning of "on behalf of" is "in the interest of," Merriam Webster's Collegiate Dictionary 103 (10th ed. 1999), "as a representative of," or "for the benefit of," Webster's Third New Int'l Dictionary, 198 (2002). Employing these common meanings, a telemarketing call is made "on behalf of" an entity if it is in the entity's interest or for its benefit.

The FCC has recognized as much. Over the course of the twenty years following the TCPA's enactment, the FCC repeatedly has made clear that the TCPA's broad restrictions on various forms of telephone solicitations cannot be evaded simply by

10

employing third parties to physically transmit illegal calls.  On this point, the FCC has stated:

> We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the responsibility for ***any*** violation of our telemarketing rules, and calls placed by a third party on behalf of that company ***are treated as if the company itself placed the call.***

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Auto. Ins. Co. for Clarification and Declaratory Ruling, CG Docket No. 02-278, 20 F.C.C.R. 13664 at ¶ 7 (Aug. 17, 2005) (emphasis added); *see also* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶ 10  (Jan. 4, 2008) (recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order, 10 F.C.C.R. 12391 at ¶ 13 (Aug. 7, 1995)("Our rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.").[4]

Further, this Court has already correctly established that "on behalf of" liability extends to those entities that stand to benefit.  When the parties were unable to agree

---

[4] In this regard, the TCPA "is a strict liability statute." *CE Design Ltd. v. Prism Bus. Media, Inc.*, No. 07-c-5838, 2009 WL 2496568, at *3 (N.D.Ill. Aug. 12, 2009); *see also Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) ("Numerous courts have determined that the TCPA does not require intent[.]"); *Accounting Outsourcing, LLC. v. Verizon Wireless Personal Commc'ns, L.P.*, 329 F. Supp. 2d 789, 818 (M.D. La. 2004) ("the TCPA . . . impose[s] strict liability for [its] civil damages provisions"); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004) ("The TCPA is essentially a strict liability statute[.]"), *aff'd* 442 F.2d 1239 (10th Cir. 2006).

517371.a02

on the proper scope of "on behalf of" discovery, in his Order of November 4, 2011 setting forth the scope of initial discovery, Magistrate Judge Kaull stated this Court's definition of "on behalf of" liability and the rationale for its imposition:

> For discovery purposes the *phrase* "on behalf of" means:
>
> 1.      Marketers' solicitations are made in the seller's interest or aid, or for the seller's benefit;
>
> 2.      Sellers who benefit from marketers' activities are best positioned to monitor those activities and should not be permitted to "[turn] a blind eye" to TCPA violations and escape TCPA liability by "creating and maintaining an attenuated relationship with the marketer that induces sales of the sellers products . . . and creates a revenue stream running directly to the seller."

(Order Memorializing Order of Nov. 4, 2011, 3).

A contrary rule would eviscerate the consumer privacy protections afforded by the TCPA. Telemarketers like VMS could simply outsource lead-generation to a third-party (here, TSS), receive thousands of sales-leads from the third-party—with no questions asked about whether the third-party's efforts were TCPA compliant—and avoid responsibility for the third-party's TCPA violations. For good reason, Congress expressly extended the private right of action not only to entities that themselves violate the law, but also to entity on whose behalf the violations occurred.

Applying the unambiguous terms of the statute and the everyday meaning of the terms used therein, and buttressed by the FCC's longstanding application and interpretation of the statute, as well as the findings of this Court, it is clear that VMS is not entitled to summary judgment with respect to the calls placed by TSS. As stated in Plaintiff's brief in support of her motion for partial summary judgment, TSS obtains sales leads and sells them to VMS by calling consumers and asking them to complete a so-called "safety survey." (Pl.'s Mem. Supp. Partial Summ. J. 3, ¶ 3). Apparently TSS

12

does not "scrub" the numbers it dials against the DNC Registry; in any event, TSS placed at least two such calls to the Plaintiff, whose number has been listed on the DNC Registry continuously since 2003.  (*Id.* at 7, ¶ 14).   Each month VMS buys approximately 20,000 of these survey leads from TSS,  (*id.* at 3, ¶ 2), the purpose of which VMS's president acknowledges is "to generate a lead for a home security system[,]" (*id.* at 6, ¶ 9).  VMS then calls these leads—without checking the numbers against the DNC Registry because of its mistaken belief that "verbal consent" is sufficient to overcome a consumer's listing on the DNC Registry.  (*Id.* at 6-7, ¶¶ 10-12).  VMS telemarketers follow a script entitled "VMS Survey Script," (Pl.'s Mot. Summ. J. Exhibit 4), that acknowledges the called party's "participat[ion] in **our** Home Safety Survey," (*id.* (emphasis added)), and pitches VMS's security monitoring services.

Plaintiff submits that these facts establish conclusively that the TSS calls to Plaintiff were made on VMS's behalf.  At this stage, of course, Plaintiff need not conclusively establish anything; all that is necessary for Plaintiff to defeat VMS's summary judgment motion is to cite record evidence in opposition to the motion, which Plaintiff has done above and in the exhibits attached to her motion for partial summary judgment.[5]

---

[5] In its brief, VMS cites *Charvat v. Echostar Satellite, LLC,* 676 F. Supp. 2d 668 (S.D. Ohio 2009).  But VMS neglects to mention that on appeal, the FCC submitted an amicus brief rejecting the very arguments asserted by VMS, and urging reversal of the trial court's grant of summary judgment, or, alternatively, asking the court to refer the case to the FCC under the doctrine of primary jurisdiction.  The Sixth Circuit agreed, and referred the issues on appeal to the FCC for full briefing and comment. *See Charvat v. Echostar Satellite,* 630 F.3d 459 (6th Cir. 2010).  The parties are now awaiting the decision of the FCC.

### D.  VMS's remaining grounds for summary judgment are without merit.

Finally, VMS posits that it should receive summary judgment because "VMS acted reasonably in light of the Plaintiff's prior verbal consent and in response to the Plaintiff's apparent, but feigned, interest in the home security system being offered by VMS." (Def.'s Mem. Supp. Summ. J. 20). The throwaway nature of this argument is betrayed by the fact that VMS cites exactly no statutory or common law in support.

Plaintiff has established that she is a DNC registrant, that she received telemarketing calls from VMS, and that VMS has no signed, written agreement authorizing it to place telemarketing calls to her. These facts suffice to establish violations of 47 U.S.C. § 227(c). Perhaps because it recognizes this, VMS smatters throughout its eight pages of purported facts a host of argumentative irrelevancies that have no bearing on summary judgment. VMS casts aspersions on Ms. Mey, referencing her pre-suit settlement demand, and suggesting she somehow entrapped VMS into violating the law. While it is understandable that VMS resents being the subject of a putative class action alleging widespread violations of federal telemarketing law, the fact is that Ms. Mey is an unapologetic advocate of privacy rights and TCPA enforcement who engaged in the sort of widely-accepted investigative techniques authorized for federal investigatory bodies, including the FTC. *See* Consent Decree, *United States v. Credit Bureau Collection Servs.*, No. 2:10-cv-169 (S.D. Ohio Feb. 24, 2010) (authorizing FTC to pose as consumers and suppliers in order to monitor compliance with federal law) (Exhibit 2). As Ms. Mey explained in her deposition, her efforts to determine who was behind the dozens of illegal calls she received were intended to "gather information. I play along much in the same way that a detective or

517371.a02

police officer would gather information so I can determine who's behind the call, because in my experience, they will hang up if you start to inquire too directly." Exhibit 3, at 203 (Mey Dep. Dec. 30, 2011). "[T]o do otherwise," she testified, "they hang up and they continue to call, and unless you can get someone to give you . . . the information, it's just an endless cycle." *Id.* at 73.

Ms. Mey legitimately took action to obtain information necessary to exercise her statutory right to an action alleging illegal telemarketing. She has done so, and has provided the Court with more than sufficient evidence to withstand VMS's ill-advised motion for summary judgment. The Court should deny VMS's motion, and allow discovery to proceed on all issues.

## Conclusion

For these reasons, Plaintiff respectfully requests that VMS' Motion for Summary Judgment be denied.

Plaintiff Diana Mey,
By Counsel.


*/s/ John W. Barrett*
John W. Barrett
Jonathan Marshall
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*

Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415

517371.a02

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,**

    **Plaintiff,**

    **v.**                          **CASE NO. 5:11-CV-90**

**MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and
UTC FIRE & SECURITY AMERICAS CORPORATION, INC.,**

    **Defendants.**

## Certificate of Service

I hereby certify that on this 21st day of February,  2012, I served ***Plaintiff's Memorandum in Opposition to Defendant Versatile Marketing Solutions, Inc.'s Motion for Summary Judgment***, using the CM/ECF system, which will send notification to Defendants' counsel of record:

> Jeffrey A. Holmstrand
> Phillip T. Glyptis
> Flaherty Sensabaugh & Bonasso PLLC
> 1225 Market Street
> Wheeling, WV 26003
>
> William D. Wilmoth
> Kristen L. Andrews
> Steptoe & Johnson PLLC
> Post Office Box 751
> Wheeling, WV 26003
>
> Niall A. Paul
> Clifford F. Kinney, Jr.
> John R. Teare, Jr.
> Spilman Thomas & Battle PLLC
> 300 Kanawha Boulevard, East
> Charleston, WV 25321

517371.a02

Christina S. Terek
Spilman Thomas & Battle, PLLC
1217 Chapline Street
P.O. Box 831
Wheeling, WV 26003

/s/ John W. Barrett
John W. Barrett

517371.a02