**Federal Communications Commission**                    **FCC 13-54**

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| The Joint Petition Filed by | ) | CG Docket No. 11-50 |
| DISH Network, LLC, the United States of | ) | |
| America, and the States of California, Illinois. | ) | |
| North Carolina, and Ohio for Declaratory Ruling | ) | |
| Concerning the Telephone Consumer Protection | ) | |
| Act (TCPA) Rules | ) | |
| | ) | |
| The Petition Filed by Philip J. Charvat for | ) | |
| Declaratory Ruling Concerning the Telephone | ) | |
| Consumer Protection Act (TCPA) Rules | ) | |
| | ) | |
| The Petition Filed by DISH Network, LLC for | ) | |
| Declaratory Ruling Concerning the Telephone | ) | |
| Consumer Protection Act (TCPA) Rules | ) | |

**DECLARATORY RULING**

**Adopted:  April 17, 2013**                    **Released:  May 9, 2013**

By the Commission:  Commissioner McDowell not participating and Commissioner Pai approving in part, dissenting in part and issuing a statement.

## I.    INTRODUCTION

1.        In this Declaratory Ruling, we address three petitions for declaratory ruling raising issues concerning the Telephone Consumer Protection Act of 1991 (TCPA)[1] that have arisen in two pending federal court lawsuits.  In doing so, we clarify that while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.[2]

## II.    BACKGROUND

### A.    The Telephone Consumer Protection Act Of 1991

2.        The TCPA regulates the use of telemarketing – the marketing of goods or services by telephone.  In 1991, Congress found that "[t]he use of the telephone to market goods and services to the home and other businesses" had become "pervasive," that "over 30,000 businesses actively telemarket[ed] goods and services to business and residential customers," that "[m]ore than 300,000

---

[1] Pub. L. No. 102-243, 105 Stat. 2394 (1991), *codified at* 47 U.S.C. § 227.

[2] 47 U.S.C. §§ 227(b) & (c).

solicitors call[ed] more than 18,000,000 Americans every day," and that "[m]any consumers [were] outraged over the proliferation of intrusive nuisance calls to their homes from telemarketers."[3]  Congress further found that "[o]ver half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations."[4]  "Under the circumstances," a Congressional committee explained, "federal legislation [was] needed to both relieve states of a portion of their regulatory burden and protect legitimate telemarketers from having to meet multiple legal standards."[5]  Congress accordingly enacted the TCPA to give the FCC the authority to regulate interstate and intrastate telemarketing in order to enable consumers to curb calls that had "become an intrusive invasion of privacy."[6]

3.      Among its provisions, the TCPA makes it unlawful for any person within the United States to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice without the prior express consent of the called party."[7]  The statute also authorizes the Commission to establish a national "do-not-call" registry that consumers can use to notify telemarketers that they object to receiving telephone solicitations.[8]  Under the Commission's regulations, no person or entity is permitted to "initiate any telephone solicitation . . . to any residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."[9]  In addition, no telemarketer may call a residential telephone subscriber unless the telemarketer has established procedures for maintaining a list of persons who do not wish to be called.[10]

4.      Beyond empowering the FCC and state Attorneys General to enforce the statute,[11] the TCPA creates separate private rights of action for violations of the prerecorded calling and do-not-call restrictions.  With respect to the prerecorded calling restrictions (as well as other telemarketing restrictions imposed in section 227(b)), section 227(b)(3) states that "[a] person or entity" may bring "an action [for damages and injunctive relief] based on a violation" of the statutory prohibition or the Commission's implementing regulations.[12]  With respect to the do-not-call restrictions, section 227(c)(5) allows "persons" to seek damages and injunctive relief if they have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."[13]

---

[3] TCPA §§ 2(1), 2(2), 2(3) & 2(6); 47 U.S.C. § 227 note.

[4] TCPA § 2(7).

[5] H.R. Rep. 102-317 (1991), at 10.

[6] *Mainstream Marketing Services, Inc. v. FTC*, 358 F.3d 1228, 1235 (10th Cir. 2004) (*Mainstream Marketing*).  *See generally* 47 U.S.C. § 227.

[7] 47 U.S.C. § 227(b)(1)(B).  *Accord* 47 C.F.R. § 64.1200(a)(2) (implementing statutory prohibition).  Such calls are sometimes referred to as "robocalling."  The restriction in both the statute and the rule is subject to certain exceptions.

[8] 47 U.S.C. § 227(c)(1)-(4).

[9] 47 C.F.R. § 64.1200(c)(2).  Again, the restriction is subject to certain exceptions.

[10] *Id.* § 64.1200(d).

[11] *See* 47 U.S.C. § 227(g)(1), (3).

[12] *Id.* § 227(b)(3).

[13] *Id.* § 227(c)(5).

B.     *Charvat v. EchoStar Satellite, LLC*

5.       In 2007, plaintiff Philip Charvat sued EchoStar Satellite LLC (the satellite television service operations of which are now provided by the DISH Network) in the United States District Court for the Southern District of Ohio.  Charvat asserted, among other claims, that telemarketers attempting to sell him subscriptions to EchoStar satellite television programming had made 30 calls in violation of the TCPA.[14]  Twenty-seven of the calls were prerecorded, and three were placed by live operators.[15]  Charvat's requests to be placed on the callers' do-not-call list apparently went unheeded.[16]  EchoStar moved for summary judgment, arguing that it could not be held liable for TCPA violations because the calls were made by "independent contractors" rather than by EchoStar itself.[17]

6.       The district court granted EchoStar's motion.  The court held that whether EchoStar's telemarketing "[r]etailers" were "agents" or "independent contractors" was "not necessarily dispositive" of the legal question whether, under the TCPA, their telephone solicitations were made "on behalf of" EchoStar.[18]  To resolve that issue, the district court instead looked to principles of Ohio agency law.  The court observed that, under Ohio law, a hired party "act[s] 'on behalf of' the hiring party" when the "hiring party retains 'the right to control the manner or means' by which a particular job is completed."[19]  The court reasoned that the state law question of whether EchoStar had the "right to control the manner or means" of its retailers' conduct therefore was dispositive of the "on behalf of" question under the TCPA.[20]

7.       Relying on EchoStar's contracts with its retailers, the court held that EchoStar did not have the right to control the manner and means of the retailers' conduct as required under the state agency law standard.  The court acknowledged that EchoStar retained control over the selection and prices of the programming that its retailers offered to potential subscribers; that it reserved the right to discipline or terminate retailers for their failure to comply with telemarketing laws; and that the retailers agreed to indemnify EchoStar for any losses it incurred as a result of their marketing efforts.[21]  Nonetheless, finding that "[t]he Retailers have the sole authority to determine how to best market [the] products [offered] and whom to solicit," the district court concluded that EchoStar did not exercise sufficient control over their marketing efforts to be held liable for their acts under the TCPA.[22]  It therefore granted summary judgment against Charvat on his TCPA claims.

8.       On appeal, the Sixth Circuit determined that, "[a]t the heart of this case (and of Charvat's appeal) is the question whether the [TCPA] and its accompanying regulations permit Charvat to recover damages from EchoStar, an entity that did not place any illegal calls to him but whose independent

---

[14] *Charvat v. EchoStar Satellite, LLC*, 676 F. Supp. 2d 668, 670 (S.D. Ohio 2009).

[15] *Id.*

[16] *Id.*

[17] *Id.* at 674.

[18] *Id.*

[19] *Id.* at 674-75 (quoting *Bostic v. Connor*, 524 N.E.2d 881, 883 (Ohio 1988)).

[20] *See id.* at 676 ("the question [is] whether EchoStar retains the right to control the manner or means by which the Retailers carry out their contractual duties."); *see also id.* (relevant question is "whether EchoStar controls the manner or means by which the Retailers *market* the product") (emphasis in original).

[21] *Id.* at 676; *see also id.* at 674 (quoting Retailer Agreement).

[22] *Id.* at 676.

**Federal Communications Commission**                                    **FCC 13-54**

contractors did."[23]  Finding that that question and subsidiary questions "implicate the FCC's statutory authority to interpret the Act, to say nothing of its own regulations," the court of appeals referred the matter to the Commission under the doctrine of primary jurisdiction for the parties to seek a ruling regarding the proper interpretation of the relevant statutory and regulatory provisions.[24]

C.     *United States, et al. v. DISH Network, LLC*

9.       Meanwhile, the United States (on behalf of the Federal Trade Commission ("FTC")) and the Attorneys General of California, Illinois, North Carolina, and Ohio filed a lawsuit in 2009 against the DISH Network ("DISH") in federal district court in Illinois seeking damages and injunctive relief for alleged violations of federal and state telemarketing restrictions.[25]  Among other things, the government plaintiffs alleged that DISH, through its authorized dealers, had made unlawful prerecorded calls and had made prohibited calls to telephone numbers on the national do-not-call registry.[26]  The plaintiffs further alleged that: (1) DISH had authorized its dealers "to use DISH Network trademarks and trade names, to collect money for DISH Network, and to perform other services as part of their positions as authorized dealers;" (2) DISH "paid commissions and other financial incentives to the Dealers for telemarketing services;" (3) DISH "received complaints from consumers regarding the Dealers' telemarketing practices, and thereby, knew or consciously avoided knowing that the Dealers were violating" telemarketing restrictions; and (4) despite possessing contractual authority to terminate the dealers, DISH "continued to retain the Dealers to perform telemarketing services . . . after receiving consumer complaints."[27]

10.       The district court denied DISH's motion to dismiss the federal claims on the basis that it was not vicariously liable for the actions of its independent dealers.[28]  Finding that DISH's motion "turns on the meaning of the phrase 'on whose behalf' or 'on behalf of,'" the court determined that the Commission's rules used that language "to impose responsibility on the person 'on whose behalf' a telephone solicitation is made."[29]  The court found that the "plain meaning" of those phrases "is an act by a representative of, or an act for the benefit of, another" and that this reading does not require the plaintiffs to allege any formal agency relationship between DISH and its telemarketers.[30]  The court thus concluded that the plaintiffs' "allegations, if true, could plausibly establish" that the telemarketers "acted on behalf of DISH Network."[31]  Nevertheless, following the Sixth Circuit's decision in the *Charvat* case to permit the parties to seek a primary jurisdiction referral to the Commission of similar questions, the district court stayed proceedings on the TCPA claims (but not the FTC or state law claims) and ordered

---

[23] *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 465 (6th Cir. 2010).

[24] *Id.* at 465-66, 468.

[25] *See United States v. DISH Network, LLC*, 667 F. Supp. 2d 952, 956 (C.D. Ill. 2009) (summarizing claims).  Only the state attorneys general presented claims under the TCPA; the United States based its lawsuit on alleged violations of parallel Federal Trade Commission telemarketing restrictions.  *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 957-62 (addressing alleged violations of Federal Trade Commission rules), 962-63 (addressing alleged violations of the TCPA).  DISH also sought dismissal of state law claims on the grounds that the TCPA allegedly preempted such claims.  *Id.* at 957.  The court denied that request as well.  *Id.* at 963-64.

[29] *Id.* at 962 (citing 47 C.F.R. § 64.1200(c)(2)).

[30] *Id.* at 963.

[31] *Id.*

the parties "to jointly file an administrative complaint with the FCC seeking the FCC's interpretation of the phrase 'on behalf of'" in section 227 and the Commission's implementing rules.[32]

### D.     The Petitions For Declaratory Ruling

11.     In accordance with the federal district court's primary jurisdiction referral order in the *DISH Network* litigation, on February 22, 2011, DISH, the United States, and the States of California, Illinois, North Carolina and Ohio (the "States") filed a joint petition seeking expedited clarification of and declaratory ruling on the TCPA and the Commission's implementing rules (*Joint Petition*).  In response to the Sixth Circuit's primary jurisdiction order, Charvat and DISH filed separate petitions for declaratory ruling (the *Charvat Petition* and the *DISH Petition*) on March 2, 2011, and March 10, 2011, respectively.

12.     All three petitions sought FCC rulings interpreting the prerecorded and do-not-call provisions of the TCPA and the Commission's implementing regulations to determine whether they create liability for a seller, such as DISH, as a result of unlawful telemarketing calls made by the seller's third-party retailers.  Charvat's petition asks the Commission to declare that a seller is liable under the TCPA for unlawful telemarketing calls that are sent by third parties "on behalf of" or "for the benefit of" the seller.[33]  In its portion of the *Joint Petition* and in its separate petition, DISH asks the Commission to declare that the TCPA does not impose liability on a seller for unlawful telemarketing calls made by third-party retailers, at least in the absence of proof that the third-party telemarketer acted at the seller's direction and request.[34]  The States and the United States ask the Commission to find that, "under the TCPA, a call placed by a seller's dealer to market the seller's services qualifies as a call 'on behalf of' and initiated by the seller."[35]

13.     On April 4, 2011, the Consumer and Governmental Affairs Bureau issued a *Public Notice* seeking comment on the petitions for declaratory ruling.[36]  The Bureau generally requested comment "on the circumstances under which a person or entity is liable for telemarketing violations committed by dealers or other third parties that act on the person's or entity's behalf" and asked, in particular, two sets of questions:

> 1)  Under the TCPA, does a call placed by an entity that markets the seller's goods or services qualify as a call made on behalf of, and initiated by, the seller, even if the seller does not make the telephone call (*i.e.*, physically place the call)?
>
> 2)  What should determine whether a telemarketing call is made "on behalf of" a seller, thus triggering liability for the seller under the TCPA?  Should federal common law agency principles apply?  What,

---

[32] *United States v. DISH Network, LLC*, 2011 WL 475067 *4 (C.D. Ill. 2011).

[33] *Charvat Petition* at 2.

[34] *Joint Petition* at 1-2; *DISH Petition* at 1-2.

[35] *Joint Petition* at 19, 21.

[36] Public Notice, DA 11-594 (rel. April 4, 2011) ("*Public Notice*").

if any, other principles could be used to define "on behalf of" liability for a seller under the TCPA?[37]

14.     Numerous parties submitted filings addressing the issues identified in the petitions and the *Public Notice*.[38]   Petitioner Charvat states that the Commission has long construed the TCPA and its implementing regulations to create a private right of action against sellers for violations of both do-not-call restrictions and the prerecorded residential calling prohibition when telemarketers make unlawful calls on their behalf.[39]   Citing dictionary definitions, Charvat contends that a telemarketing call plainly is made "on behalf of" a seller within the meaning of the TCPA if it is made "in the interest of" or "for the benefit of" the seller.[40]   Charvat asserts that proof of agency is not required.[41]

15.     Alternatively, Charvat argues that, to the extent that the absence of "on behalf of" language in section 227(b)(3) precludes reliance on that "plain meaning" standard with respect to prerecorded telemarketing calls, the Commission should apply generally applicable agency principles to ensure that the TCPA protections against such calls are not undermined.[42]   According to Charvat, these agency principles include: (a) the concept of ratification, when the seller accepts the benefits of the telemarketer's actions; and (b) apparent authority, when the seller affirmatively, or through negligent inaction, makes it appear to third parties that the telemarketer has authority to act on the seller's behalf.[43]   Charvat also contends, in the alternative, that "the FCC may extend liability for a Robocall violation of the TCPA to the entity who ultimately benefits from the call by applying a broad interpretation of the word 'initiate' as it appears in [section 227(b)(1)(B)]."[44]   In particular, Charvat argues that "[b]y authorizing its retailers to telemarket on its behalf, and by compensating its retailers for finding new DISH subscribers, EchoStar facilitated or set into motion the facts that ultimately led to the illegal Robocall telemarketing campaign at issue."[45]

16.     In contrast, DISH in its formal comments argues that the TCPA – both in the prerecorded call provisions and the do-not-call provisions – imposes liability only for "a business or person that places its own unlawful calls, or the call center that places unlawful calls."[46]   DISH asserts that its more limited view of the TCPA's reach is confirmed by the statute's language and legislative history, which allegedly focus exclusively on the party that directly uses the telephone network by initiating or making calls.[47]   DISH acknowledges that section 227(c)(5) creates a private right of action for certain calls "'by or on

---

[37] *Public Notice* at 4.   The Commission also sought comments "addressing the applicability of federal agency law and federal joint venture law to the TCPA liability questions presented herein."  *Id.*

[38] *See* Appendix for a list of commenters.

[39] *Charvat Petition* at 8-10.

[40] *Id.* at 12-13.

[41] *Id.* at 13.

[42] *Id.* at 14-15.

[43] *Id.* at 15-16.

[44] *Id.* at 16 n.5.

[45] *Id.*

[46] DISH Comments at i.  *Accord Joint Petition* at 10-11 and *DISH Petition* at 9 n.29.  *But see DISH Petition* at 9-13 (appearing to acknowledge that section 227(c)(5) creates vicarious liability for violations of the do-not-call rules when a telemarketer unlawfully makes a call "on behalf of" a seller).

[47] DISH Comments at 4-7.

behalf of the same entity in violation of the [FCC's do-not-call] regulations,'" but argues that this provision does not define the conduct that constitutes a violation and, instead, "merely describes the fact of the call," which "could be by a business or a telemarketer calling on someone's behalf."[48]

17.     DISH further contends that, even if the "on behalf of" language in section 227(c)(5) could be viewed as expanding the scope of liability to reach sellers "on behalf of" whom unlawful calls are made, that section applies only to private actions to enforce the do-not-call rules; it does not reach private actions to enforce the prerecorded call restrictions, since the prerecorded call restrictions are contained in section 227(b)(3) of the statute, which does not contain the "on behalf of" phrase.[49]  DISH relies on the presence of "on behalf of" language in section 227(c)(5) and the absence of such language in section 227(b)(3) to argue that if Congress intended to permit vicarious liability in private actions under the former provision, it also consciously intended to deny the availability of such liability in private actions under the latter provision.[50]

18.     DISH asserts that, "if the TCPA permit[s] 'on behalf of' liability" for do-not-call violations, such liability does not extend to "independent actions of third parties who are not acting under the direction and control" of the party whose services are being marketed.[51]  Rather, DISH contends that the "on behalf of" language should be read to create vicarious liability only in circumstances where the seller has actual knowledge "that a particular consumer will be called."[52]  Alternatively, DISH suggests that "federal common law principles of agency" should be employed to determine when TCPA liability may be imposed upon parties that do not actually make telemarketing calls.[53]  In an ex parte filing submitted after the close of the formal pleading cycle, DISH acknowledged that, under agency principles, a seller could be held vicariously liable for the conduct of third-party telemarketers "if the principal directs the retailer's telemarketing activity by providing call lists," or "if the principal know that a retailer is repeatedly engaging in violative telemarketing when selling the principal's products or services, and the principal fails to take reasonable measures to address the unlawful conduct."[54]

19.     The federal government parties – the United States and the Federal Trade Commission – urge the Commission to rule that, under the TCPA, "a call placed by an entity that markets the seller's goods or services . . . qualif[ies] as a call made on behalf of, and initiated by, the seller even if the seller did not place the call."[55]  According to the FTC, "the plain meaning of 'on behalf of' should be employed when determining whether a seller should be held liable for a marketer's violative telephone calls."[56]  The FTC states that the common meaning of "on behalf of" set out in standard dictionaries would impose

---

[48] *Id.* at 8 (quoting 47 U.S.C. § 227(c)(5)).

[49] *Joint Petition* at 11-13.

[50] *DISH Petition* at 6-7.

[51] *Joint Petition* at 16-17.

[52] *DISH Petition* at 14-15.

[53] *Joint Petition* at 17-18; DISH Comments at ii.

[54] Letter, dated Dec. 9, 2011, from Steven Augustino, to FCC Secretary ("*DISH Dec. 9 Ex Parte*"), at 2.  Accord Letter, dated Dec. 16, 2011, from William M. Wiltshire, Counsel, DIRECTV, to FCC Secretary ("*DIRECTV Dec. 16 Ex Parte*"), at 1.

[55] FTC Comments at 1; *see also* United States Comments at 6-7 (arguing that a telemarketing call made on behalf of a seller also qualifies as a call "initiate[d]" by the seller within the meaning of Robocall prohibition of section 227(b)(1)(B) and a call "ma[de] or transmit[ted]" within the meaning of the do-not-call restrictions authorized in section 227(c)(F)).

[56] FTC Comments at 1-2.

**Federal Communications Commission**                    **FCC 13-54**

liability on the seller when a marketer acts in the seller's interest or for its benefit, and there accordingly is no basis to import agency principles into the construction.[57]

20.      The States argue that the seller should be deemed to be a party that "initiates" or "mak[es]" a telemarketing call within the meaning of the TCPA prerecorded call and do-not-call restrictions, even if a third-party telemarketer is involved.[58]  They note that a common dictionary definition of "initiate" is to "'cause (a process or action) to begin.'"[59]  The States contend that the seller's involvement in compensating telemarketers for the calls they make satisfies this definition.[60]

21.      "Beyond the liability apportioned to the Seller by the application of the term 'initiate,'"[61] the States point to standard dictionaries that define the phrase "on behalf of" to mean "in the interest of," "as a representative of," or "for the benefit of."[62]  Citing these definitions, the States urge the Commission to rule that a call is made "on behalf of" a seller "if it is in the seller's interest" or "if it aids or benefits the seller."[63]  The States contend that this reading is consistent with prior Commission statements that calls placed by telemarketers on behalf of a seller are treated as if the seller itself made the call.[64]  Moreover, the States dispute that such a reading would unfairly burden lawful telemarketing practices, noting that reputable telemarketers support strict enforcement of TCPA restrictions against both sellers and third parties.[65]

22.      The American Teleservices Association (ATA),[66] which represents "companies with inbound or outbound contact centers, users of teleservices, trainers, consultants, and equipment suppliers who initiate, facilitate, and generate telephone, internet and e-mail sales, service, and support," argues that "sellers should not escape compliance obligations under the Commission's rules simply by outsourcing services to third-party vendors."[67]  ATA "acknowledges that sellers are frequently in the best position to oversee and police compliance of third-party vendors to ensure that the sellers' good and services are marketed to consumers in a compliant manner."[68]  ATA recommends that sellers' liability for unlawful

---

[57] *Id.* at 7.

[58] The States contend that imposing liability on the seller in DISH's "big box" hypothetical is consistent with the statute.  States Reply at 4.

[59] State Comments at 4 (quoting the Oxford online dictionary).

[60] *Id.* at 4.

[61] *Id.* at 4.

[62] *Joint Petition* at 24 (citing Merriam-Webster's Collegiate dictionary 103 (10th ed. 1999) and Webster's Third New International Dictionary 198 (2002)).

[63] *Id.* at 24.

[64] *Id.* at 24-26 (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, para. 7 (2005) (*State Farm Ruling*); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397, para. 13(1995) (*TCPA 1995 Order*); *Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd 559, 565, para. 10 (2008) (*ACA International Ruling*); Amicus Brief of FCC and the United States at 9-10, *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 2010 WL 5392875 (6th Cir. 2010)).

[65] States Comments at 9-10 (citing statements by the Direct Marketing Association).

[66] Since its filing, ATA has changed its name to the Professional Association for Customer Engagement.  *See* About PACE, http://paceassociation.com/about/ (last visited Dec. 7, 2012).

[67] ATA Comments at 1, 3.

[68] *Id.* at 3.

**Federal Communications Commission**                    **FCC 13-54**

calls made by third-party vendors should be "a function of the extent of the sellers' involvement and oversight of the vendors' compliance," including such factors as: (1) the extent to which sellers "measured the vendors' compliance practices and procedures during the selection process;" (2) the extent to which sellers "actively monitor and measure vendors' compliance during the performance of the calling programs and campaigns;" and (3) "[s]pecific instructions provided by sellers to the vendors to foster and best ensure compliance."[69]  ATA argues that, "[t]o the extent that sellers remain actively involved in measuring and monitoring the compliance of their vendors, but the vendors violate the Commission's regulations through no fault of the sellers, sellers should not be held liable for such violations."[70]  Rather, a seller "sh[ould] be liable for calls made in violation of the TCPA by a third-party vendor only when a seller fails to take certain measures to ensure compliance by third-party vendors during a calling program."[71]

23.     Numerous consumers filed comments asserting that they had received telemarketing calls in violation of the statute.  Consumers indicate that when they have contacted DISH about unlawful calls marketing its services, they have received little or no relief from DISH, which claims not to maintain the information necessary to determine which telemarketing entity made the call.[72]  Consumers contend that many telemarketers hide their own Caller ID information and only reveal the identity of the seller of the services or products they are marketing after the consumer expresses some interest in the sales pitch.[73]  Consumers argue that, because telemarketers often go to extreme efforts to hide their own identities, it is essential to hold the sellers liable for the unlawful calls that telemarketers make on their behalf.[74]  Consumers also stress that DISH, in fact, is able to identify the telemarketers that unlawfully make calls on its behalf, because such unlawful calls cease after TCPA lawsuits provide DISH with sufficient incentives to have them curbed.[75]

## III.    DISCUSSION

24.     Petitioners on both sides contend that the statutory text provides a clear answer to the questions of whether and when the TCPA contemplates indirect liability by the seller for unlawful calls made by an independent telemarketer.  We disagree.  The statute defines neither the term "initiate," nor the phrase "on behalf of."  We are therefore left to construe those terms in the course of our administration of the TCPA.  Our rules have long drawn a distinction between the telemarketer who initiates a call and the seller on whose behalf a call is made.  In accordance with those rules, as we explain below, we clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer.

### A.     Sellers Generally Do Not "Initiate" Calls Made By Third-Party Telemarketers.

25.     The TCPA makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior

---

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] Gerald Roylance Comments at 3; Robert Braver Comments at 3; Charles Dean Comments at 3-4, 6.

[73] Robert Braver Comments at 2.

[74] Robert Biggerstaff Comments at 15-16.

[75] Joe Shields Comments at 2; Robert Biggerstaff Reply at 9-10; Stewart Abramson Comments at 2-3.

**Federal Communications Commission**                                    **FCC 13-54**

express consent of the called party, unless the call is initiated for emergency purposes or is exempted by [Commission] rule or order."[76]  Likewise, the Commission's do-not-call rules make it unlawful for any person or entity to "initiate any telephone solicitation . . . to any residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."[77]

26.     Neither the statute nor our rules define the term "initiate."  The dictionary meaning of the term is "to set going, by taking the first step."[78]  The States contend that the seller's involvement in telemarketing calls by third parties satisfies this definition because, absent the contractual arrangements by which the seller compensates telemarketers, "no third party would ever engage in making even legal marketing calls in the attempt to sell the Seller's products and/or services."[79]  That reading is, in our view, too broad, for it would logically encompass a host of activities which have only a tenuous connection with the making of a telephone call, but which could be viewed as a "but for" cause of such calls.  Thus, for example, the mere fact that a company produces and sells a product does not mean that it initiates telephone calls that may be made by resellers retailing that product.  Instead, the word "initiate" suggests a far more direct connection between a person or entity and the making of a call.  We conclude that a person or entity "initiates" a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call.

27.     This reading is reflected in our rules, which define "telemarketer" as "'the person or entity that *initiates* a [telemarketing] call,'" and define the separate term "seller" as "'the person or entity on whose behalf a [telemarketing] call or message *is initiated.*'"[80]  Our rules thus draw a clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf.  To be sure, a seller can also be a telemarketer – *e.g.*, when the seller initiates a call on its own behalf.  And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example.  But a construction of the statute that concludes that a seller always initiates a call that is made by a third party on its behalf would entirely collapse the distinction, reflected in our current rules, between seller and telemarketer.[81]  Any revision of this codified

---

[76] 47 U.S.C. § 227(b)(1)(B).

[77] 47 C.F.R. § 64.1200(c)(2).

[78] *American Heritage College Dict*. 714 (4th ed. 2003).

[79] State Comments at 4.

[80] DISH Comments at 13 (quoting 47 C.F.R. §§ 64.1200(f)(7) & (9)).

[81] We note that the federal government's amicus brief to the Sixth Circuit in the *Charvat* case stated that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call," and that in those circumstances, "the entity is properly deemed to have initiated the call through another."  Brief for the FCC and United States at 2, *Charvat v. Echostar Satellite, LLC*, No. 09-4525 (6th Cir.) (filed Nov. 15, 2010); *see also id*. at 10.  The brief made clear, however, the government's ultimate conclusion that "an entity may be held liable under the TCPA and the Commission's regulations for calls made on its behalf, even though it did not itself initiate those calls."  *Id*. at 12.  Although we do not, in this declaratory ruling, generally deem the seller to "initiate" a call made on its behalf by another, we adhere to the brief's conclusion that an entity can be vicariously liable for calls made on its behalf, and reaffirm that vicarious liability exists separate and apart from whether the entity can be deemed itself to have initiated a call made by another.

interpretation would require a notice-and-comment rulemaking, and is therefore beyond the scope of this adjudicatory proceeding.[82]

### B.  Sellers Can Be Held Vicariously Liable For Certain Calls Made By Third-Party Telemarketers.

28.     Our conclusion that a seller does not necessarily *initiate* a call that is placed by a third-party telemarketer on the seller's behalf does not end our inquiry.  For even when a seller does not "initiate" a call under the TCPA, we conclude that it may be held vicariously liable for certain third-party telemarketing calls.  In particular, we find that the seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers.  In this regard, we explain below that a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.[83]  Because the statute provides separate private rights of action for violations of the do-not-call provisions of section 227(c) and violations of other TCPA prohibitions (such as those against pre-recorded calls) contained in section 227(b), we address each provision in turn.

### 1.  Vicarious Liability With Respect To "Do-Not-Call" Violations

29.     Federal statutory tort actions, such as those authorized under the TCPA, typically are construed to incorporate federal common law agency principles of vicarious liability where, as here, the language of the statute permits such a construction and doing so would advance statutory purposes.[84] Consistent with this precedent, and the presumption that "legislatures act with case law in mind,"[85] we find that section 227(c)(5) contemplates, at a minimum, the application of such principles of vicarious seller liability for do-not-call violations.  That provision empowers "any person" to sue for damages and injunctive relief for do-not-call violations "by *or on behalf of*" a company.[86]  In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

---

[82] *See Bell Atlantic-Delaware, Inc. v. Frontier Communications Services*, 16 FCC Rcd 8112, 8120 (2001) ("We are mindful that the Commission has been asked to clarify or revise existing regulations . . . .  But because this has come before us as part of [an adjudicatory] proceeding regarding past behavior, we are constrained to interpret our current regulations and orders."); *cf. American Federation of Government Employees, AFL-CIO, Local 3090 v. FLRA*, 777 F.2d 751, 759 (D.C. Cir. 1985) ("an agency seeking to repeal or modify a legislative rule promulgated by means of notice and comment rulemaking is obligated to undertake similar procedures to accomplish such modification or repeal").

[83] *See* paras. 33-34, 45-47, below.

[84] *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that Fair Housing Act imposes vicarious liability for racial discrimination according to traditional agency principles, as outlined in HUD regulations); *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-574 (1982) (holding that "general principles of agency law," including "apparent authority theory," may establish a basis for liability in private antitrust actions under 15 U.S.C. § 15); *American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427-1440 (3d Cir. 1994) (general agency principles, including apparent authority, apply to determine liability in private damages action for alleged false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp.2d 789, 794-95, 805-06 (M.D. La. 2004) (liability in private TCPA action under section 227(b)(3) for violation of prohibitions against unsolicited fax advertisements may be predicated on agency doctrines of vicarious liability, because to construe the statute otherwise would effectively allow "an end-run around the TCPA's prohibitions").

[85] *Abuelhawa v. U.S.*, 556 U.S. 816, 821 (2009).

[86] 47 U.S.C. § 227(c)(5) (emphasis added).

**Federal Communications Commission**          **FCC 13-54**

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made *by or on behalf of* that person or entity,[87] and they specify, among other things, that if do-not-call requests "are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, *the person or entity on whose behalf the telemarketing call is made will be liable* for any failures to honor the do-not-call request."[88]  Our rules implementing the national do-not-call registry also recognize "on behalf of" liability.  In particular, the rule provides a safe harbor from liability for an entity "on whose behalf telephone solicitations are made," if that entity can "demonstrate that the violation is the result of error and that as part of its routine business practice, it meets [certain] standards," including (1) the adoption of "written procedures to comply with the national do-not-call rules" and (2) the training of "its personnel, *and any entity assisting in its compliance*, in procedures established pursuant to the national do-not-call rules."[89]

30.    Standard dictionary definitions of the phrase "on behalf of" include, among other things, "in the interest of," "as a representative of," and "for the benefit of" – concepts that easily can be read to encompass common law agency principles.[90]  More generally, we also find that reading section 227(c) to recognize "on behalf of" liability by sellers for the third-party telemarketing calls that violate the do-not-call rules best implements Congress's express purpose behind those rules – the "[p]rotection of subscriber privacy rights."[91]  Among other things, section 227(c) directs the Commission, in promulgating do-not-call rules, to determine the "most effective and efficient" measures to serve that purpose and to implement measures "for protecting [subscriber] privacy rights . . . in an efficient, effective, and economical manner" that does not impose additional charges on telephone subscribers.[92]  Reading section 227(c)(5) to impose vicarious seller liability for do-not-call violations under federal common law agency principles serves these goals.

31.    A number of parties argue that statutory "on behalf of" liability extends beyond agency principles to subject the seller to vicarious liability for violations of both section 227(c) and section 227(b) so long as the call is made simply to aid or benefit the seller – even if agency principles would not impose vicarious liability on the seller for the call.[93]  We reject these contentions for purposes of this declaratory ruling proceeding.  In principle, section 227(c)(5), read on a blank slate, might be construed to authorize "on behalf of" liability that extends beyond agency principles.  However, our orders discussing "on behalf of" liability under section 227(c) appear to link that concept to agency principles.[94]  Moreover, the Commission's existing TCPA regulations implementing both sections 227(b) and 227(c) use the same ("on behalf of") phrase.[95]  Since we find below that vicarious liability for violations of section 227(b) is

---

[87] 47 C.F.R. § 64.1200(d) (emphasis added).

[88] *Id.* § 64.1200(d)(3) (emphasis added).

[89] 47 C.F.R. § 64.1200(c)(2)(i)(A) & (B) (emphasis added).

[90] *See, e.g.*, *Merriam-Webster's Collegiate Dictionary* 103 (10th ed. 1999); *Webster's Third New International Dictionary* 198 (2002).

[91] 47 U.S.C. § 227(c).

[92] *Id.* § 227(c)(1)(E) & (2).

[93] *See* Joint Petition at 24; FTC Comments at 7-8; United States Comments at 13.

[94] *See TCPA 1995 Order,* 10 FCC Rcd at 12397, para. 13 (equating calls "on behalf of" a party and calls placed by an "agent"); *State Farm Ruling*, 20 FCC Rcd at 13667, para. 7 (equating calls by "State Farm's exclusive agents" with calls made "on behalf of State Farm").

[95] *See, e.g.,* 47 C.F.R. §§ 64.1200 (a)(2), (a)(3)((iv), (a)(4)(vi), (a)(7)(iv), (f)(9) (all using the term "on behalf of" in circumstances beyond do-not-call).

available only under federal common law agency principles,[96] reading "on behalf of" to provide for more extensive vicarious liability in the context of do-not-call violations under section 227(c) would implausibly require that phrase to have different meanings under our rules, depending on the particular violations at issue, without any indication in past precedent that different meanings were intended. Accordingly, as we hold above with respect to the statutory term "initiate," at a minimum, any attempt to construe "on behalf of" liability for do-not-call violations as extending beyond those applicable to prerecorded calls would require notice and comment rulemaking.[97]

32.     To be clear, and contrary to the partial dissent's contention, we do not find that the statute necessarily provides for a single standard of third-party liability for prerecorded call violations and do-not-call violations.  Instead, we leave open the possibility that we could interpret section 227(c) to provide a broader standard of vicarious liability for do-not-call violations.[98]  We simply observe that, in light of our current rules, which do treat these provisions analogously, we could not come to such a conclusion in a declaratory ruling proceeding, but only after notice and comment rulemaking.  Thus, it may well be that the Commission could ultimately decide that "on behalf of" liability goes beyond agency principles. However, creating such a new interpretation is not appropriate for a Declaratory Ruling.  For that reason, the relevant question is not whether the terms of a statute trump a rule, which they do, but whether the Commission should adhere in a Declaratory Ruling to the interpretation of the statute evinced by its prior rules and orders.  This *Declaratory Ruling* properly adheres to those prior determinations.

## 2.     Vicarious Liability With Respect To Violations Of Section 227(b).

33.     We find that vicarious seller liability under federal common law agency principles is also available for violations of section 227(b).  As we note above in connection with our discussion of section 227(c), federal statutory tort actions, such as those authorized under the TCPA, customarily are construed to incorporate general common law agency principles of vicarious liability where such a construction would advance statutory purposes and does not conflict with the statutory text.[99]

34.     The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control."[100]  Potential liability under general agency-related principles extends beyond classical agency, however.  A principal may be liable in circumstances where a third party has apparent (if not actual) authority.[101]  Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal."[102]  Other principles of agency law

---

[96] *See* Section III.B.2, below.

[97] *See* para. 27 & n.82, above.

[98] The partial dissent (at 24) seeks to enlist an April 2, 2013 Department of Justice ("DoJ") filing for the proposition that the statute must be read to require a different (and heightened) vicarious liability standard for do-not-call violations under section 227(c) than for robocall and other violations under section 227(b).  However, DoJ made clear in a subsequent filing that although it believes that asymmetrical vicarious liability standard to be "a theoretically permissible view of the statute," it does not endorse that interpretation as mandatory, or even as the best construction of the TCPA.  Letter from Patrick Runkle, DoJ, to FCC Secretary, at 1 (Apr. 8, 2013).

[99] *See* para. 29 & n.84, above.

[100] Restatement (Third) of Agency § 1.01.

[101] *E.g., Hydrolevel Corp.*, 456 U.S. at 565-74.

[102] Restatement (Third) of Agency § 2.03, cmt. c.  As commonly understood under modern agency principles

(continued . . .)

may support liability in particular cases.  For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits.[103]  Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."[104]

35.     While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA.

36.     Reading the TCPA to incorporate baseline agency principles of vicarious liability with respect to violations of section 227(b) is consistent with judicial precedent.  The TCPA was enacted primarily to protect consumers from unwanted telemarketing invasions.  The private right of action provided in section 227(b)(3) gives consumers the power not only to seek compensation for the harms unlawful telemarketing causes, but also to deter future unlawful invasions of privacy.  In *Hydrolevel Corp.*, the Supreme Court determined, in a private antitrust action under 15 U.S.C. § 15, that the statute permitted the imposition of liability against a trade association for the actions of its agents.  Noting that a purpose of the statute was to deter anticompetitive actions, the Court held that allowing vicarious liability, in that case on the basis of apparent authority, would advance that goal because, if the trade association "is civilly liable for the antitrust violations of its agents acting with apparent authority, it is much more likely that similar antitrust violations will not occur in the future."[105]  The Court explained that "[o]nly [the trade association] can take systematic steps to make improper conduct on the part of all its agents unlikely, and the possibility of civil liability will inevitably be a powerful incentive for [it] to take those steps."[106]  By contrast, denying trade association liability would allow the association to "avoid liability by ensuring that it remained ignorant of its agents' conduct," contrary to congressional intent that the "private right of action deter antitrust violations."[107]

(. . . continued from previous page) ───────────────────────
reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person.  *Id.*, reporter's note a.  Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.*  Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation."  *Id.*, cmt. c.  And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others."  *Id.*  In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

[103] Restatement (Third) of Agency § 4.01, cmt. d.

[104] *Id.*  Thus, a seller may be bound by the unauthorized conduct of a telemarketer if the seller "is aware of ongoing conduct encompassing numerous acts by [the telemarketer]" and the seller "fail[s] to terminate," or, in some circumstances, "promot[es] or celebrat[es]" the telemarketer.  *Id.*

[105] 456 U.S. at 572.

[106] *Id.*

[107] *Id.* at 573.  We find that the "general common law" of agency-related principles, "rather than . . . the law of any particular State," should govern in construing the reach of the TCPA. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (*CCNV*).  Such a reading "reflects the fact that 'federal statutes are generally intended to have uniform nationwide application.'"  *Id.* (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989)); *see also Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751 (2012) ("TCPA liability . . . depends on violation of a federal statutory requirement or an FCC regulation, . . . not on a violation of any state substantive law.").  And the legislative history of the TCPA, in particular, reflects an intent to promote uniformity of

(continued . . .)

37.     This analysis applies comfortably to private rights of action for violations of section 227(b).  As government and consumer commenters argue – and as the telemarketing industry acknowledges – the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers.[108]  We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.[109]  By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.[110]  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, . . . suing one or a few of them is unlikely to make a substantive difference for consumer privacy."[111]  And as the Third Circuit determined in an analogous context, absent the application of agency-related principles, the seller (in this instance) "would benefit from undeterred unlawful acts, and the statute's purpose . . . would go unrealized."[112]  Reading the TCPA to incorporate baseline agency-related principles imposing vicarious liability on sellers also advances Congress' intent that the Commission harmonize its TCPA enforcement, to the extent possible, with that undertaken by the

(. . . continued from previous page)
regulation in telemarketing.  *See, e.g.*, H.R. Rep. 102-317 (1991), at 10 (finding that "federal legislation is needed ... [to] protect legitimate telemarketers from having to meet multiple legal standards"); 137 Cong. Rec. S18317-01, at 1 (1991) (remarks of Sen. Pressler) ("The Federal Government needs to act now on uniform legislation to protect consumers.").  We find that the application of uniform agency principles across the country should benefit both sellers that rely on telemarketing and consumers by reducing uncertainty regarding governing standards of vicarious liability.  We disagree, however, with DISH's assertion that general federal common law principles of agency limit a principal's responsibility to circumstances in which formal agency exists and the principal exerts immediate direction and control.  *Joint Petition* at 17-18 (citing *CCNV*, 490 U.S. at 751-52).  The *CCNV* case on which DISH relies, unlike the present context under the TCPA, involved the application of general agency principles to the statutory term "employee."  490 U.S. at 738.  As noted above, federal common law of agency also extends to concepts such as apparent authority, when statutory goals would thereby be served.  *See Hydrolevel Corp.*, 456 U.S. at 565-574.

[108] FTC Comments at 7 (stating that the seller "is in the best position to monitor the manner in which its products are marketed"); ATA Comments at 3 (stating that "sellers are frequently in the best position to oversee and police compliance of third party vendors to ensure that the sellers' goods and services are marketed to consumers in a compliant manner"); *accord* United States Comments at 13; States Comments at 8.  Consumers with experience challenging TCPA violations argued below that sellers are able to police their telemarketers, but lack sufficient incentive to do so until lawsuits are filed, which threaten to expose them to liability.  Joe Shields Comments at 2; Robert Biggerstaff Reply at 9-10; Steward Abramson Comments at 2-3.

[109] *See* FTC Comments at 9.

[110] *Id.*; United States Comments at 10-11; Robert Biggerstaff Comments at 15-16; Robert Braver Comments at 2.

[111] FTC Comments at 8; FTC Reply at 1; *see Winback and Conserve Program, Inc.*, 42 F.3d at 1434 (finding that the purposes of the Lanham Act would be served by application of agency-related principles because it would be infeasible to expect the injured party "to initiate suit in separate jurisdictions against every independent contractor which it believes violated its intellectual property rights").

[112] *Winback and Conserve Program, Inc.*, 42 F.3d at 1434.

FTC in connection with its Telemarketing Sales Rule.[113]  Under that Rule, the FTC has taken the position that sellers are responsible for the violations of their authorized dealers.[114]

38.     Construing the TCPA prohibitions contained in section 227(b) to incorporate agency principles is also consistent with our administrative precedent.  Addressing section 227(b) prohibitions in 2008, the Commission clarified that autodialed debt collection calls by third-party debt collectors to wireless telephone numbers would be treated as having been made with the called party's express consent, if the called party had provided the creditor with the wireless number during the transaction that resulted in the debt.[115]  At the same time, we stressed that the "creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third-party collector on behalf of that creditor are treated as if the creditor itself placed the call."[116]  Our precedent in the do-not-call context is to the same effect.  In a 1995 rulemaking order, we explained that "[o]ur rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."[117]  Responding to commenters' assertions that responsibility for the calls should be "soundly based on agency principles," we stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call."[118]  Accordingly, we stated that calls placed by telemarketing agents of tax exempt nonprofit organizations, as well as those placed by the nonprofit organizations themselves, would be exempted from telemarketing restrictions under the Act.[119]  Similarly, in a 2005 order declaring that State Farm's exclusive independent insurance agents may make lawful telemarketing calls on behalf of State Farm so long as State Farm has a valid "established business relationship" with the customer, we "reiterate[d] that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."[120]

---

[113] *Mainstream Marketing*, 358 F.3d at 1234 n.4 (citing Do-Not-Call Implementation Act, Pub. L. No. 108-10, 117 Stat. 557 (2003)).  We recently strengthened consumer protections, among other things, by amending our rules to require prior express written consent for all autodialed and prerecorded telemarketing calls to wireless numbers and for prerecorded telemarketing calls to residential lines, thereby eliminating the prior "established business relationship" exemption for such calls to residential lines.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (CG Docket No. 02-278), Report and Order, 27 FCC Rcd 1830, para. 2 (2012).  In doing so, we expressly sought to "harmonize our rules with those of the FTC[]."  *Id.*

[114] FTC Comments at 6.

[115] *ACA International Ruling*, 23 FCC Rcd at 564-65, paras. 9-10.

[116] *Id.* at 565, para. 10.

[117] *TCPA 1995 Order,* 10 FCC Rcd at 12397, para. 13.

[118] *Id.* at 12397, paras. 12, 13.

[119] *Id.* at 12397, para. 13; *see* 47 C.F.R. §64.1200(a)(3)(iv) (prohibiting unsolicited robocalls unless "made by or on behalf of a tax-exempt nonprofit organization").  The partial dissent asserts (at 4) that the interpreting "on behalf of" under our existing rules to reflect federal common law agency principles could have "pernicious and unintended results" with respect to the scope of charitable exemptions.  But that is precisely the result that charities and their allied telemarketers sought and received at the time the Commission adopted the rule exempting from its rules calls "made by or on behalf of a tax-exempt nonprofit organization."  *See TCPA 1995 Order*, 10 FCC Rcd at 12397, paras. 12-13.  Although the partial dissent asserts (at 25 n.16) that these parties were seeking to exempt calls made by "independent telemarketers" (rather than agents) on behalf of charities, those parties argued to the Commission that the scope of the exemption "is soundly based on agency principles." *TCPA 1995 Order*, 10 FCC Rcd at 12397, para. 12.

[120] *State Farm Ruling*, 20 FCC Rcd at 13667, para. 7.

39.     DISH dismisses these decisions as applying only to the expansion of *exemptions* from TCPA restrictions and not to the expansion of potential liability to the seller for the unlawful actions of its telemarketers.[121]  The terms of the orders are not so limited.  Nor as a matter of policy do we believe that the principles governing the scope of the TCPA's exemptions from liability by telemarketers and sellers should differ from those  governing the scope of the statute's consumer protections, particularly given that the TCPA has as one of its primary goals the protection of consumers from unwanted telemarketing intrusions.

40.     DISH and AT&T assert that the presence of "on behalf of" language applicable to actions under section 227(c)(5) to enforce the TCPA's do-not-call provisions, compared with the absence of such language in connection with actions to enforce the prerecorded call (and other) prohibitions of section 227(b), demonstrates a Congressional determination that vicarious seller liability should apply only to do-not-call violations and not to unlawful prerecorded calls.[122]  We disagree.  The language of sections 227(b)(3) and section 227(c)(5) is not parallel.  Section 227(b)(3) provides a private right of action for a "violation" of the Act; unlike section 227(c)(5), it does not speak to the "person" or "entity" that places a call.[123]  Thus, the absence of the phrase "on behalf of" in section 227(b)(3) does not foreclose the application of baseline federal common law agency principles – which typically apply to federal tort statutes – to impose vicarious liability on the seller for third-party violations of section 227(b).  Moreover, although the Commission has not to date adopted such an interpretation in connection with its TCPA regulations, the specific language in section 227(c)(5) providing for vicarious "on behalf of" liability by the seller for do-not-call violations committed by third-party telemarketers could be read to establish liability that extends *beyond* that available under common law agency-related principles.  Because section 227(c) potentially may be read to provide consumer remedies that are *more expansive* than those available under common law agency principles, there is no reason to read Congressional silence (in section 227(b)) as evidence of intent to preclude the baseline agency principles of vicarious liability that would normally apply with respect to federal tort statutes like the TCPA.  Indeed, two recent district court decisions properly reject any such negative implication.[124]

41.     Similar analysis leads us to reject DISH's suggestion that section 217 of the statute – which provides that "the act, omission, or failure to act of any officer, agent, or other person acting for or employed by any *common carrier* or *user*" shall be "deemed to be the act, omission, or failure of such carrier or user as well" – also creates a negative implication for holding it vicariously liable, because it allegedly is neither a common carrier nor the physical "user" of the telecommunications network.[125]  We

---

[121] DISH Comments at 16-18.

[122] *Joint Petition* at 11-13; *DISH Petition* at 6-7; *see also* AT&T Comments at 2-3 (arguing that vicarious liability is available only with respect to do-not-call violations).

[123] *Compare* 47 U.S.C. § 227(b)(3) *with id.* § 227(c)(5).

[124] *See Thomas v. Taco Bell Corp.*, 879 F. Supp.2d 1079, 1084 (C.D. Cal.  2012) (TCPA contemplates that a seller may be vicariously liable under agency principles for violations of section 227(b) notwithstanding the absence of "on behalf of" liability available for do-not-call violations under section 227(c)); *Mey v. Pinnacle Security, LLC*, 2012 WL 4009718 *4 - *5 (N.D. W.Va. Sept. 12, 2012) (same).  Although we agree with the courts in *Thomas* and *Mey* that the absence of "on behalf of" language in section 227(b) does not preclude vicarious liability for violations of that section under common law agency principles, we do not believe it is appropriate to limit vicarious liability to the circumstances of classical agency (involving actual seller, or right to control, of the telemarketing call) addressed in those cases.  Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b).  *See* paras. 33-34, above, and paras. 45-47, below.

[125] 47 U.S.C. § 217 (emphasis added); *see Joint Petition* at 13-14.

need not decide, for present purposes, whether DISH falls outside the scope of section 217,[126] since we find that Congress in section 217 affirmatively extended vicarious liability of entities within the scope of that provision *beyond* "agents" – in the case of section 217, to *any* party "acting for" "common carriers" or "users."[127]   Congress's express decision to provide (for entities within the scope of section 217) consumer remedies that are *more expansive* than those available under common law agency principles, logically provides no reason to read Congressional silence (with respect to entities outside the scope of section 217) as evidence of intent to withdraw even the baseline agency principles of vicarious liability that normally apply with respect to federal tort statutes like the TCPA.

42.     In sum, the evident importance of vicarious seller liability in providing an effective remedy for violations makes it unreasonable to believe that Congress would have denied consumers such a remedy for unlawful prerecorded calls by implication.   That is particularly so, given that, as explained above, the application of general common law agency principles to federal tort statutes is the norm in the absence of clear evidence that Congress intended to withdraw the application of such principles.

43.     DISH's remaining policy arguments do not persuade us that the application of common law principles of vicarious seller liability would conflict with the purposes of the TCPA.   DISH contends, for instance, that, except where the telemarketer is acting at the express direction and control of the seller with respect to the particular customer, imposition of vicarious liability would unacceptably heighten business risk by making liability "unpredictable, unlimited and uncontrollable."[128]   Such liability, according to DISH, "would unreasonably burden legitimate telemarketing practices and have a ripple effect on the economy at large, which relies on legitimate telemarketing activities."[129]   Similarly, DIRECTV asserts that such liability would force sellers to "pull out of the independent retailer channel in order to avoid liability, and consumers would lose local contacts and competitive choices between retailers."[130]   DIRECTV also contends that if third-party telemarketers conclude that liability for their unlawful calls can be shifted to sellers, they will have little incentive to comply with TCPA restrictions and violations will increase.[131]

44.     We find these concerns to be misplaced.   Sellers can simultaneously employ third-party telemarketers and protect their legitimate commercial interests by exercising reasonable diligence in selecting and monitoring reputable telemarketers and by including indemnification clauses in their contracts with those entities.[132]   Moreover, we disagree that imposing seller liability will increase unlawful telemarketing by reducing the incentives of third-party telemarketers to comply with TCPA restrictions.   To the contrary, overall unlawful activities should be reduced, as sellers will have an incentive to carefully choose their telemarketers to ensure compliance and to force consistent violators out of the marketplace.   Moreover, imposing vicarious liability on the seller would in no way absolve the

---

[126] Although DISH is not a common carrier, we have been presented with no authoritative precedent on the meaning of "user" under section 217, and decline to resolve the question of whether DISH might fall within the scope of that term in the present context.

[127] *Long Distance Direct, Inc.*, 15 FCC Rcd 3297, 3300 & n.12 (2000); *Silv Communication Inc.*, 25 FCC Rcd 5178, 5180 & n.18 (2010).

[128] *Joint Petition* at 9; *see also id.* at 17.

[129] *Id.* at 9.

[130] DIRECTV Comments at 6.

[131] *Id.* at 3-4, 6.

[132] *See* FTC Reply at 2 n.2; ATA Comments at 3.

third-party telemarketer of joint liability.  Thus, vicarious seller liability should not decrease telemarketers' incentives to obey TCPA restrictions.

45.     Finally, we reject DISH's contention in this proceeding that vicarious liability beyond strict, classical agency relationships would extend seller liability to the marketing by "big box stores and national dealers (such as Best Buy, Sears, *etc.*) who sell numerous manufacturers' products (such as Sony televisions, Whirlpool appliances, etc.)."[133]  DISH suggests that, if it is liable for the unlawful telemarketing calls of its third-party retailers, then an unlawful call by an employee of a national retail outlet would "create liability for the business whose brand is on the product being sold . . . (*e.g.*, Sony and Whirlpool), even where the business did not use the telephone or otherwise direct and control the big box store salesperson."[134]  We note that DISH's hypothetical appears to bear no relationship to the telemarketing model giving rise to the petitions before us in this proceeding.[135]  In any event, to the extent that such a store is selling on its own account – *i.e.*, it has purchased goods from a manufacturer and is re-selling them – the manufacturer would not be a seller at all.[136]

46.     To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations.[137]  For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information.  The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.[138]  At a minimum, evidence of these kinds of relationships

---

[133] DISH Comments at 3.

[134] *Id.* at 3.

[135] FTC Reply at 2.

[136] *See* Gerald Roylance Comments at 8-9 & n.3; Charvat Comments at 2.

[137] *See* Letter, dated Oct. 26, 2011, from Lisa K. Hsiao, U.S. Dept. of Justice, to FCC Secretary, at 5-6 ("October 26 DOJ *Ex Parte* Letter").  Contrary to the partial dissent's contention, we do have expertise – gleaned from our role in administering the TCPA and reviewing the record in this proceeding – in applying Congress's goals under the statute and the circumstances in which telemarketing call may arise on behalf of sellers.  Indeed, the partial dissent agrees that the TCPA, which the Commission interprets, incorporates principles of federal agency law.  There is thus no good reason why we should not provide guidance to regulated parties, consumers, and courts as to how we understand those general incorporated principles to apply in this specific context, where the Commission has decades of experience.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-53 (9th Cir. 2009) (Congress has delegated power to the FCC to interpret and implement the TCPA).

[138] See *id.* at 6.  DISH and DIRECTV agree that "if the principal directs the retailer's telemarketing activity by providing call lists for telemarketing, the principal can be held liable for the reseller's telemarketing based on those lists."  *DISH Dec. 9 Ex Parte*, at 2.  They also agree that "if the principal knows that a retailer is repeatedly engaging in violative telemarketing when selling the principal's products or services, and the principal fails to take reasonable measures to address the unlawful conduct, depending on the facts, that also could be interpreted as directing the unlawful conduct."  *Id.  Accord DIRECTV Dec. 15 Ex Parte*, at 1.  *See also* Letter, dated December 15, 2011, from

(continued . . .)

**Federal Communications Commission**                                      **FCC 13-54**

– which consumers may acquire through discovery, if they are not independently privy to such information[139] – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

47.    In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b).[140]   However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services.  In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised.  In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

## IV.    CONCLUSION

48.    For the reasons discussed herein, we grant in part and otherwise deny the above-captioned petitions for declaratory ruling.  We clarify that, while a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services.

## V.    ORDERING CLAUSES

49.    Accordingly, IT IS ORDERED that, pursuant to sections 1-4, 227, and 303(r) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, 303(r), and section 64.1200 of the Commission's rules, 47 C.F.R. § 64.1200, this Declaratory Ruling in CG Docket No. 11-50 IS ADOPTED as set forth herein.

(. . . continued from previous page) ────────────────────
Davida Grant, AT&T, to FCC Secretary, at 3 (Factors relevant to "assess[ing] whether the seller took reasonable measures with respect to the third party to protect customers from unwanted solicitations" include whether "the seller provided the plaintiff's number to the third party for telemarketing purposes," and whether "the seller has actual knowledge of a pattern of telemarketing violations by the third party").

[139] *See*, *e.g.*, Rules 26 – 37, Fed. R. Civ. P. (addressing means of discovery in federal district courts).  Needless to say, nothing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf.

[140] Accordingly, the partial dissent misreads our decision in asserting (at 5) that we "attempt[] to equate the federal common law of agency with strict liability."

**Federal Communications Commission**                                           **FCC 13-54**

50.     IT IS FURTHER ORDERED that the Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois. North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules (filed February 22, 2011); the Petition Filed by Philip J. Charvat for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules (filed March 2, 2011); and the Petition Filed by DISH Network, LLC for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules (filed March 10, 2011) ARE GRANTED TO THE EXTENT SPECIFIED HEREIN AND ARE OTHERWISE DENIED.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

**Federal Communications Commission**                    **FCC 13-54**

# APPENDIX

**List of Participants in the Proceeding**

*Comments Filed*

Stewart Abramson
American Teleservices Association
AT&T Inc.
Todd Bank
Robert Biggerstaff
Robert H. Braver
Nathan Burdge
Philip J. Charvat
Jay Connor
Charles Dean
DIRECTV, Inc.
DISH Network, LLC
Federal Trade Commission
Diana L. Mey
Gerald Roylance
Joe Shields
States of California, Illinois, North Carolina, and Ohio
Jimmy A. Sutton
The United States
Richard Zelma


*Reply Comments Filed*

Stewart Abramson
Robert Biggerstaff
Nathan Burdge
Philip J. Charvat
DISH Network, LLC
Federal Trade Commission
Mark. R. Lee
Diana Mey
Gerald Roylance
Joe Shields
States of California, Illinois, North Carolina, and Ohio
The United States

## STATEMENT OF
## COMMISSIONER AJIT PAI,
## APPROVING IN PART AND DISSENTING IN PART

Re:    *The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules; The Petition Filed by Philip J. Charvat for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules; The Petition Filed by DISH Network, LLC for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, CG Docket No. 11-50.

Congress passed the Telephone Consumer Protection Act (TCPA) in the wake of increasing complaints about telemarketing from consumers and a ragged patchwork of state laws addressing the problem. The TCPA was a "federal intervention balancing the privacy rights of the individual and the commercial speech rights of the telemarketer."[1] Therefore, it is not surprising that the statutory scheme reflects a compromise (and a complicated one at that) that uses precise distinctions to effectuate Congress's purpose.

Our job at the Commission is to implement the laws as they are written by Congress, not to rewrite them to conform to our own policy preferences. Accordingly, we should—indeed, must—respect the statute's precise boundaries.[2] Moreover, clear rules better protect consumers, better inform businesses engaged in lawful telemarketing, and better serve the courts who must handle the litigation arising under the TCPA. Because today's declaratory ruling does not advance the appropriate interpretation of the statute, eschews clear rules that would preclude wasteful litigation, and expounds an area of law that we are not empowered to administer, I dissent in part.

I.

Let me start with where I agree with today's item. *First*, I agree that a person "initiates" a telephone call when he physically places that call. Thus when a third-party telemarketer places a call on a seller's behalf, it is the telemarketer, and not the seller, who "initiates" that phone call.[3] *Second*, I agree that a seller may be held vicariously liable for TCPA violations committed by third-party telemarketers.

But it is in defining the scope of that third-party liability that I part ways with my colleagues. I find implausible as a matter of statutory construction the declaratory ruling's insistence on one and only one standard of third-party liability for both prerecorded call violations (governed by section 227(b)) and do-not-call violations (governed by section 227(c)). Although administratively convenient, this one-size-fits-all approach gives short shrift to the divergent language of these two provisions. I believe instead that sections 227(b) and 227(c) embrace different approaches to third-party liability. Under section 227(b), sellers should be held vicariously liable under federal common-law agency principles for TCPA violations committed by third-party telemarketers. By contrast, under section 227(c), third-party liability

---

[1] Report of the Energy and Commerce Committee of the U.S. House of Representatives, H.R. Rep. 102-317, at 10 (1991) (TCPA House Report).

[2] *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 93–94 (2002) (explaining that "like any key term in an important piece of legislation, the [statutory provision in question] was the result of compromise between groups with marked but divergent interests in the contested provision" and that "[c]ourts and agencies must respect and give effect to these sorts of compromises"); *see also* John F. Manning, *Second-Generation Textualism*, 98 Cal. L. Rev. 1287, 1309–17 (2010) (arguing that respecting legislative compromise means that courts "must respect the level of generality at which the legislature expresses its policies").

[3] *See Declaratory Ruling*, para. 26.

exists whenever a telemarketer initiates a call on a seller's behalf, even if that telemarketer is not under the seller's control.

Consider first the language the TCPA uses to confer a private right of action in each context.  On one hand, the TCPA states that a person "may . . . bring . . . an action based on a violation" of the prerecorded call rules to enjoin further calls or recover damages.[4]  In short, the statute is silent on the scope of third-party liability applicable to section 227(b) violations.

On the other hand, the TCPA's do-not-call rules specifically contemplate third-party liability.  The TCPA specifies that a "person who has received more than one telephone call within any 12-month period by *or on behalf of* the same entity in violation of the [do-not-call] regulations . . . may . . . bring . . . an action based on [such] a violation" to enjoin further calls or recover damages.[5]  In other words, the statutory phrase "on behalf of" explicitly extends third-party liability to section 227(c) violations.

Congress does not normally use differing language in two parallel provisions to mean the same thing.  Just as "[i]t cannot be presumed that any clause in the constitution is intended to be without effect,"[6] statutory language "cannot be regarded as mere surplusage; it means something."[7]  And yet the declaratory ruling would read section 227(c) no differently if the phrase "on behalf of" were excised from the text.[8]

Instead of incorporating federal common-law agency principles into section 227(c), the Commission should give meaning to "on behalf of" and impose third-party liability for do-not-call violations whenever a telemarketer initiates a call on a seller's behalf, even if that telemarketer is not under the seller's control.[9]  Such a standard would not only respect the specific language Congress used in the TCPA, it would also better implement the statutory scheme.[10]

Two further distinctions in the statutory text confirm the necessity and propriety of an "on behalf of" standard for third-party liability for do-not-call violations.  *For one*, an "on behalf of" standard is necessary if consumer enforcement of the do-not-call provisions is to be effective.  Section 227(c)(5) imposes a two-call rule for do-not-call violations, prohibiting a consumer from bringing suit unless she has received "more than one telephone call . . . by or on behalf of the same entity."[11]  If "on behalf of" means what it says, the consumer's burden of proof is low:  She would only need to prove that both calls were marketing the product of a single seller, and she could then file suit against either the telemarketer or

---

[4] 47 U.S.C. § 227(b)(3).

[5] 47 U.S.C. § 227(c)(5) (emphasis added).

[6] *Marbury v. Madison*, 1 Cranch 137, 174 (1803); *id*. ("Affirmative words are often, in their operation, negative of other objects than those affirmed; and in this case, a negative or exclusive sense must be given to them or they have no operation at all.").

[7] *Potter v. United States*, 155 U.S. 438, 446 (1894).

[8] *See Declaratory Ruling*, paras. 29, 31–32, 40.

[9] *Compare with* Restatement (Third) of Agency § 1.01 (defining "agency" as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf *and subject to the principal's control*" (emphasis added)).  To be clear, I do not view "on behalf of" liability as entirely divorced from classical agency principles (and thus I agree with the declaratory ruling that "on behalf of" liability should not extend to resellers such as big-box retailers who are not part of an authorized chain of telemarketers), but I cannot believe Congress intended to simply incorporate agency principles either.

[10] Curiously, the declaratory ruling appears to recognize that the phrase "on behalf of" is often used to mean something more ephemeral than a formal agency relationship—that it can mean simply "in the interest of" or "for the benefit of."  *See Declaratory Ruling*, para. 30 (citing *Webster's Third New International Dictionary*).

[11] 47 U.S.C. § 227(c)(5).

the seller.  But if "on behalf of" merely incorporates the federal common law of agency, a consumer will be forced to navigate that legal thicket even if she chooses to sue the telemarketer alone.  That's because under the common-law standard, the private cause of action would depend upon the agency relationship between the seller and every telemarketer that called the consumer.  Suppose, for example, the consumer receives calls from two different telemarketers purporting to represent the same seller.  If the federal common law would impute the actions of the first telemarketer that called the consumer to the seller but not the second, then the consumer would not have *any* do-not-call cause of action (let alone an action against the seller), despite the fact that both calls were placed "on behalf of" the same seller.[12]

*For another*, section 227(c)(5) creates an affirmative defense for sellers that have "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."  No similar affirmative defense exists under section 227(b).  This discrepancy lends additional weight to the argument that Congress did not intend for sections 227(b) and 227(c) to be interpreted in a parallel manner with respect to third-party liability.  Rather, recognizing that the third-party liability standard under section 227(c) is stricter than under section 227(b) (due to the phrase "on behalf of"), Congress understandably chose to give sellers an affirmative defense under section 227(c) to exempt sellers who had taken substantial precautions to avoid illegal solicitations made on their behalf by unaffiliated telemarketers.

So why would Congress use a different and more expansive concept of third-party liability for do-not-call violations than for prerecorded call violations?  A recent letter from the U.S. Department of Justice lays it out succinctly:  "[B]ecause the federal government created and administers the National Do-Not-Call Registry, Congress may have determined that the federal interest in preventing violations of the Registry under section 227(c)(5) is stronger than the federal interest in preventing robocall violations under section 227(b)(3), which were already the subject of many state laws when the TCPA was enacted. In addition, Congress may have determined that one set of violations was more serious or more odious to consumers than another."[13]  On the last point, consider this:  The TCPA's prerecorded call rules apply to all consumers whereas the TCPA's do-not-call rules require consumers to opt-in by registering their phone number.  If returning some control to consumers over their phones was the purpose of the TCPA, as evidently it was,[14] it's not hard to see how violations that countermand the express wishes of consumers might be "more odious" than other violations.

The Commission does not grapple in any meaningful sense with the differences between the language contained in sections 227(b) and 227(c).  Instead, it relies on language contained in our own rules for its conclusion that the two statutory provisions should mean the same thing when it comes to third-party liability.  Specifically, the Commission states that:

---

[12] It is perhaps for this reason that the U.S. Department of Justice (DOJ) repeatedly and vehemently argues that the Commission should not confine its interpretation of section 227(c)(5) to incorporating only principles of agency law.  *See, e.g.*, Letter from Lisa K. Hsiao, U.S. Dep't of Justice, to Marlene H. Dortch, Secretary, FCC, CG Docket No. 11-50, at 3 (filed Oct. 26, 2011) (Dep't of Justice Oct. 26, 2011 *Ex Parte*) ("Agency Law Has No Place in the TCPA"); Letter from Patrick Runkle, Trial Attorney, U.S. Dep't of Justice, to Marlene H. Dortch, Secretary, FCC, CG Docket No. 11-50, at 2 (filed Apr. 2, 2013) (Dep't of Justice Apr. 2, 2013 *Ex Parte*) ("To be perfectly clear, DOJ's position is that, to interpret § 227(c)(5), the Commission need not and should not import agency law under any circumstance."); Letter from Patrick Runkle, Trial Attorney, U.S. Dep't of Justice, to Marlene H. Dortch, Secretary, FCC, CG Docket No. 11-50, at 2 (filed Apr. 8, 2013) ("DOJ also urged that the FCC reject agency law as a rule of decision in this context, and simply confirm that 'on behalf of' means what it says.").

[13] Dep't of Justice Apr. 2, 2013 *Ex Parte* at 2.

[14] TCPA House Report at 6 (describing the TCPA as "designed to return a measure of control to both individual residential telephone customers and owners of facsimile machines").

[E]xisting TCPA regulations implementing both sections 227(b) and 227(c) use the same ('on behalf of') phrase.  Since we find below that vicarious liability for violations of section 227(b) is available only under federal common law agency principles, reading 'on behalf of' to provide for more extensive vicarious liability in the context of do-not-call violations under section 227(c) would implausibly require that phrase to have different meaning under our rules, depending on the particular violations at issue, without any indication in past precedent that different meanings were intended.[15]

This reasoning is curious, to say the least.  It is black-letter law that the terms of a statute trump the terms of a rule.  Therefore, our rules should be interpreted (and promulgated) in a manner that is consistent with the terms of statutes they implement.  Here, that well-established approach is turned on its head; our interpretation of a statute is driven by what the Commission sees as the most plausible interpretation of our rules.  And so the tail wags the dog.

Even if we had the leeway to adopt this approach, it's important to note that the Commission's assessment of its regulations is in error.  The Commission's regulations implementing section 227(b) simply do not use the phrase "on behalf of" to establish the scope of third-party liability.[16]  Rather, this phase is used throughout our TCPA regulations for other purposes.  Sometimes the rules use that phrase to exempt a category of calls from liability.  Other times the rules use that phrase to define a term.  Still other times those rules use that phrase to impose liability on sellers for violations of our do-not-call rules.

Indeed, by my count, our rules implementing the TCPA (contained in 47 C.F.R. § 64.1200) use the phrases "on behalf of" or "on whose behalf" twenty separate times.  And a close examination of these regulations belies the idea that "on behalf of" merely incorporates the federal common law of agency.

*First*, the fact that our rules use the phrase "on behalf of" in some places but not others suggests that the Commission itself has thought the phrase goes beyond the common-law standard of agency, that "on behalf of" actually means as much.  But the declaratory ruling effectively neglects the phrase, or at best reinterprets it, to have no independent meaning in our rules; precisely the same third-party liability will apply, the declaratory ruling states, regardless of its presence or absence.  This cannot be.

*Second*, taking this interpretation of our rules seriously could have pernicious and unintended results.  The charitable exemptions, for example, extend to both charities and third parties calling on a charity's behalf certain liability protections from the prohibition on prerecorded calls to residences.[17]  Now that "on behalf of" means "as the agent of," charities and their third-party callers must reexamine their relationship to determine if the third parties qualify as agents under the federal common law of agency.  If they do not, then the third parties likely have been violating our prerecorded call rules for years.[18]  The same goes for any third party that distributes health care messages in compliance with the Health Insurance Portability and Accountability Act.[19]

---

[15] *Declaratory Ruling*, para. 31 (footnotes omitted).

[16] In claiming that we have used "on behalf of" language indiscriminately in implementing sections 227(b) and (c), the declaratory ruling repeatedly cites a single paragraph discussing "on behalf of" liability.  *See Declaratory Ruling*, para. 38 & notes 94, 117, 119 (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397, para. 13 (1995) (*TCPA 1995 Order*)).  But the citation misses the mark; that paragraph discusses the statutory term "solicitation" (used in section 227(c)) and cites our do-not-call rules (implementing section 227(c)).  It never mentions section 227(b).

[17] *See* 47 C.F.R. § 64.1200(a)(3)(iv).

[18] The declaratory ruling asserts that the incorporation of federal common law principles of agency into the TCPA was "precisely the result that charities and their allied telemarketers sought and received" with the charitable exemption.  *Declaratory Ruling*, note 119.  But charities made clear that they did not seek to exempt calls by their

(continued . . .)

*Third*, this approach may generate some peculiar eddies.  Consider the application of the common-law standard to our definition of "seller," which is the person "on whose behalf" a telemarketing call is initiated.[20]  If there is no agency relationship between the person that hires a telemarketer and the telemarketer, does that mean there is no "seller" for purposes of our rules?  What happens to the requirement that consumers who opt-out of future telemarketing be put on the "seller's do-not-call list"?[21]  What about other rules that assume a "seller" always exists?[22]

We could avoid each of these problems simply by adhering to the bright-line language that Congress chose to put in section 227(c)(5) and that the Commission built into its rules:  "On behalf of" means "on behalf of" liability.  It should be as easy as that.[23]

## II.

The second problem with the declaratory ruling is its interpretation of the federal common law of agency.  Perhaps as an attempt to cure the problems caused by its interpretation of the phrase "on behalf of," the declaratory ruling attempts to equate the federal common law of agency with a strict liability standard.  It asserts that the federal common law of agency goes beyond classical agency to include the doctrines of apparent authority and ratification.[24]  It claims that contractual terms forbidding a third-party "from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller" of third-party liability.[25]  It provides a laundry list of potential evidence "that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority."[26]  It attempts to shift the

---

(. . . continued from previous page) ————————————————

agents but instead "calls made on their behalf *by independent telemarketers*" and "those placed *by independent contractors*" on behalf of" charities.  *TCPA 1995 Order*, 10 FCC Rcd at 12397, para. 12 (emphases added).  To satisfy their request, we did not point to agency law (which would exclude independent contractors) but rather used the phrase "on behalf of" (which would not).

[19] *See* 47 C.F.R. § 64.1200(a)(3)(v).

[20] *See* 47 C.F.R. § 64.1200(f)(9).

[21] 47 C.F.R. § 64.1200(a)(7)(i)(B), (b)(3).

[22] *See, e.g.*, 47 C.F.R. § 64.1200(d)(4).

[23] One last point.  The declaratory ruling also insists that construing the phrase "on behalf of" to mean "on behalf of" would require a notice-and-comment rulemaking.  *See Declaratory Ruling*, paras. 31–32.  But that phrase's meaning is before us now *because* we have not previously answered the question now in front of us.  Neither of the rulings cited by the Commission, *see Declaratory Ruling*, note 94 (citing *TCPA 1995 Order*, 10 FCC Rcd at 12397, para. 13; *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, para. 7 (Consumer & Gov't Affairs Bur. 2005)), addresses the critical issue: whether a telemarketer *must* be an agent of a company in order to act "on behalf of" that company.  Rather, they merely establish the obvious proposition that an agent of a company does act "on behalf of" that company.  Moreover, one of these two rulings was issued by the Consumer & Governmental Affairs Bureau and thus is not even binding on the Commission.  *Comcast Corp. v. FCC*, 526 F.3d 763, 769 (D.C. Cir. 2008).  In reality, the Commission has previously refused to interpret the private-right-of-action provisions of the TCPA and thus cannot have established an interpretation of "on behalf of" in section 227(c)(5).  *See, e.g.*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005*, CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3815, para. 56 (2006).  Indeed, if the Commission had already decided this question in a prior order, it is strange that it took us years to issue today's declaratory ruling.  In short, I do not know of any administrative law principle that would prevent us from reading the statute or our rules to mean what they say.

[24] *See Declaratory Ruling*, para. 34.

[25] *See Declaratory Ruling*, note 102.

[26] *See Declaratory Ruling*, para. 46.

burden of proof for lack of agency onto the seller.[27]  And it concludes by saying that "we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services."[28]

I am skeptical of these claims (more on that later), but there is a far more fundamental problem with this "guidance."  It is not the Commission's place to opine on the proper contours of the federal common law of agency.  We must of course fill in the gap in the TCPA regarding the source of agency principles that apply to section 227(b)(3).  But once we have determined the applicable body of law and it is evident that we have not been entrusted to administer it (*contra* the TCPA or the Communications Act), our duty and our expertise come to an end.  If we had determined, for example, that state agency law governs, there would be no question that we need not endeavor to construe each state's agency laws.  If we had determined that some general federal statute like the Federal Tort Claims Act governed, we would not claim expertise in its interpretation.  So too here.  The federal common law of agency is a general body of law that covers numerous agencies.  Its ambit extends to labor relations, patents, environmental regulation, telecommunications, and much more.  We cannot opine—at least not with the authority afforded judicial deference[29]—on its scope and meaning, particularly as we are announcing its incipient application to TCPA violations only today.

Turning to the merits of the "guidance" provided by the Commission, the federal common law of agency simply does not impose strict liability on sellers for the actions of their telemarketers.  And even if we were to assume that the Restatement (Third) of Agency were the law of the land, its application to the relationship between a seller and its telemarketers is generally unclear and may require fact-specific inquiries beyond the scope of the present record.

For example, the black-letter law of apparent authority is that third-party liability accrues when a person "reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."[30]  The principal may manifest assent or intent "through written or spoken words or other conduct."[31]  The key problem with this theory for victims of TCPA violations is that they interact only with the telemarketer, not the seller, and thus there are no (apparent) manifestations *by the seller* on which to hang the hat of apparent authority.[32]

---

[27] *See Declaratory Ruling*, para. 46 ("At a minimum, evidence of these kinds of relationships . . . should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.").

[28] *See Declaratory Ruling*, para. 47.

[29] *See, e.g., Chevron, U.S.A. Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1986) (deference applies only "[w]hen a court reviews an agency's construction of the statute which it administers"); *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 649–50 (1990) (same); *see also* Dep't of Justice Apr. 2, 2013 *Ex Parte* at 2 ("[T]he Commission likely does not have the authority to state for the federal courts what the federal common law of agency is.").  Similarly, *Skidmore* deference makes sense only when an agency's "specialized experience" in a particular field give its arguments added weight.  *U.S. v. Mead Corp.*, 533 U.S. 218, 234–35 (2001).  And though we may have "decades of experience" administering the TCPA, *Declaratory Ruling*, note 137, we have none administering the federal common law of agency.

[30] Restatement (Third) of Agency § 2.03.

[31] Restatement (Third) of Agency § 1.03.

[32] The declaratory ruling tries to sidestep this issue by noting that "a principal may create apparent authority by appointing a person to a particular position" and "may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation."  *See Declaratory Ruling*, note 102 (citations omitted).  While true, this does not explain how a consumer is to know that a seller "appointed" a telemarketer "to a particular position" or that a particular telemarketer has "acquire[d] a

(continued . . .)

**Federal Communications Commission**             **FCC 13-54**

      Similarly problematic are some of the items on the laundry list set forth by the Commission.  For example, the declaratory ruling claims that "apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services."[33]  But the whole foundation of apparent authority is the reasonable beliefs of consumers, and few if any consumers will know whether or not a seller allows such access to a telemarketer at the time of the call.  And in any case, how does giving a telemarketer access to the detailed information that's available on almost every company's website imply agency?  Rather than clarifying the common law of agency, these dicta only muddy it, to the detriment of both consumers and businesses that want to leave or avoid the courtroom.[34]

III.

      Given Congress' inclusion of "on behalf of" in the do-not-call provisions of the TCPA, I would adopt an interpretation consistent with the terms of those provisions and our corresponding rules.  And given our limited authority over and expertise in federal agency law principles, I would abstain from opining on their application here.  I respectfully dissent in part from the Commission's contrary approach.  This is a somewhat unusual situation in that the declaratory ruling is occasioned by judicial requests for assistance;[35] thus, the cases that prompted our decision will return to the courts for review.  Hopefully, they will supply a legally sound result that will also better serve the interests of American consumers victimized by violations of the TCPA and American businesses subject to it.

---

(. . . continued from previous page) ————————————————
reputation of authority in an area," let alone how a consumer would know that at the time that she received the undesired call.

[33] *See Declaratory Ruling*, para. 46.

[34] The U.S. Department of Justice, too, believes that agency law is not as clear as the declaratory ruling suggests.  "[A]gency law is highly malleable" and "is in flux, with multiple—often competing—formulations advanced by litigants and adopted by courts."  Dep't of Justice Oct. 26, 2011 *Ex Parte* at 4.  "[A]gency law has been articulated and applied inconsistently" and "many agency law principles are inapplicable in [the context of the TCPA]."  Dep't of Justice Apr. 8, 2013 *Ex Parte* at 2.  In short, the courts are still ironing out the warps and woofs of agency law, so much so that the declaratory ruling may not even be invoking the right principles, let alone applying those principles correctly.

[35] It bears noting that we do not answer all the questions the courts asked.  For instance, the declaratory ruling declines to resolve what the term "user" means in section 217 of the Communications Act and whether a seller might be liable under that provision, despite the invitation to do so.  *See Charvat v. Echostar Satellite*, 630 F.3d 459, 465 (6th Cir. 2010).  While disappointing, this is understandable given the fact that we never sought comment on the issue and thus do not have a full record to review.