IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, individually and on
behalf of a class of all persons
and entities similarly situated,

       Plaintiff,

v.                    //   CIVIL ACTION NO. 5:11CV90
                                   (Judge Keeley)


MONITRONICS INTERNATIONAL, INC.,
VERSATILE MARKETING SOLUTIONS, INC.,
doing business as VMS Alarms, and
UTC FIRE AND SECURITY AMERICAS
CORP., INC.,

       Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court are the motions for summary judgment of Monitronics International, Inc. ("Monitronics") and UTC First and Security Americas Corp., Inc. ("UTC"). (Dkt. Nos. 93, 95). For the reasons that follow, the Court **DENIES** the motions.

**I.**

The plaintiff, Diana Mey ("Mey") claims that Versatile Marketing Solutions, Inc. ("VMS"), acting on behalf of Monitronics and UTC, telephoned her nineteen times between November 16, 2009 and July 11, 2011, despite the fact that she had listed her telephone number on the national Do Not Call Registry (the "DNC Registry" or the "Registry") in 2003. (Dkt. No. 13). Mey alleges that these calls violated the Telephone Consumer Protection Act's

**MEY V. MONITRONICS INT'L INC. ET AL**                                    **5:11CV90**

**MEMORANDUM OPINION AND ORDER**

("TCPA," or the "Act") prohibition against calls to DNC
registrants, 47 U.S.C. § 227(c), and that, even though Monitronics
and UTC did not physically place the calls themselves, they are
vicariously liable under that statute because VMS placed the calls
on their behalf. (Dkt. No. 13 at 5).

On January 31, 2012, Monitronics and UTC each filed motions
for summary judgment on the issue of whether the phrase "on behalf
of," found in § 227(c)(5), exposed them to TCPA liability when
there was no dispute that they did not physically place the calls
to Mey themselves. (Dkt. Nos. 34, 35). Mey responded to both
motions on February 21, 2012 (dkt. no. 103), and Monitronics and
UTC replied on March 6, 2012. (Dkt. Nos. 113, 114). Then, on May 4,
2012, the Court stayed the case after being advised that the
Federal Communications Commission ("FCC") would soon issue a
Declaratory Ruling on the issue of the extent "on behalf of"
liability under the TCPA. (Dkt. No. 127).

Concerned that the stay – a year long – was becoming
prejudicial, the Court lifted it on May 9, 2013. (Dkt. No. 159).
Coincidentally, that same day, the FCC released its anticipated
Declaratory Ruling. See Dish Network, LLC, 28 F.C.C.Rcd. 6574 (the
"FCC's Declaratory Ruling" or the "Ruling"). The Court then invited
supplemental briefing as to the effect of the Ruling, which the

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

parties filed on June 3, 13, and August 9, 2013. (Dkt. Nos. 162, 163, and 164). Considering the six rounds of briefing and the fulsome guidance found in the Ruling, UTC and Monitronics' motions are certainly fully briefed and ripe for disposition.

## II.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

<u>MEMORANDUM OPINION AND ORDER</u>

necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248-52.

**III.**

The appropriate breadth of liability under the TCPA lies at the heart of Monitronics and UTC's motions. Therefore, some background about the Act is helpful prior to considering the particular circumstances of this case.

**A.    The Act**

The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." <u>Mims v. Arrow Financial Services, LLC</u>, 132 S.Ct. 740, 744 (2012). In <u>Mims</u>, the Supreme Court summarized Congress' findings on the matter:

> In enacting the TCPA, Congress made several findings . . . "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted).In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." <u>Ibid.</u> (internal quotation marks omitted).

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

The TCPA is a remedial statute and thus entitled to a broad construction. See, e.g., Holmes v. Back Doctors, Ltd., 695 F.Supp.2d 843, 854 (S.D.Ill. 2010) ("It is true that . . . the TCPA is a remedial statute."). As such, it "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 258 (4th Cir. 1950). At the same time, a remedial purpose "will not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'" Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979) (quoting SEC v. Sloan, 436 U.S. 103, 116 (1978)).

Mey claims that VMS, acting "on behalf of" Monitronics and UTC telephoned her numerous times in violation of 47 U.S.C. § 227(c)(5). That subsection states, in relevant part:

> A person who has received more than one telephone call within any 12-month period by or **on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--
>
> (A)   an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B)   an action to recover for actual monetary loss from such a violation, or to receive up to $500 in

5

MEY V. MONITRONICS INT'L INC. ET AL                          5:11CV90

MEMORANDUM OPINION AND ORDER

   damages for each such violation, whichever is
   greater . . . .

Id. (emphasis added).

  Section 64.1200(c)(2) of Title 47 of the Code of Federal
Regulations prohibits any "person or entity" from "initiat[ing] any
telephone solicitation to . . . [a] residential telephone
subscriber who has registered his or her telephone number on the
national do-not-call registry of persons who do not wish to receive
telephone solicitations . . . ." Section 64.1200(f)(9) defines the
term "seller" as "the person or entity on whose behalf a telephone
call or message is initiated for the purpose of encouraging the
purchase or rental of, or investment in, property, goods, or
services, which is transmitted to any person." 47 C.F.R.
§ 64.1200(f)(9).

**B.   Early cases**

  Neither the TCPA nor its associated regulations define "on
behalf of," but courts that have considered the issue have applied
principles of agency to determine when entities are liable for
calls made by third parties. Some of these courts have relied upon
the laws of the states in which they sit, while others have applied
a more general agency analysis, resulting in a variety of
approaches to determining the reach of "on behalf of" liability.
See, e.g., United States v. Dish Network, LLC, 667 F. Supp. 2d

6

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER
_____

952, 963 (C.D. Ill. 2009) (holding that strict agency relationship
is not required if entity plausibly could have benefitted from
calls made by third party); Charvat v. Echostar Satellite, 676 F.
Supp. 2d 668, 675 (S.D. Ohio 2009) (applying Ohio law to determine
whether entities had sufficient control over third parties who made
calls); Applestein v. Fairfield Resorts, No. 0004, 2009 WL 5604429
(Md. Ct. App. July 8, 2009) (examining the "totality of
circumstances" surrounding the parties' relationship).

    The United States Court of Appeals for the Sixth Circuit
recently recognized this lack of uniformity in Charvat v. EchoStar
Satellite, LLC, 630 F.3d 459, 466 (6th Cir. 2010). There, the
plaintiff, Phillip Charvat ("Charvat"), like Mey, sued an entity,
EchoStar Satellite, LLC ("EchoStar"), that did not place illegal
calls to him, but whose independent contractors did. The Sixth
Circuit concluded that EchoStar's liability turned on the meaning
of "on behalf of" in § 227(c)(5), but that the phrase was
ambiguous:

    Does § 227(c)(5) create liability for entities on whose
    behalf calls are made even when the calls are placed by
    independent contractors rather than by agents or
    employees? And does § 225(c)(5) create liability for
    entities on whose behalf calls are made even though the
    section is labeled only as a private right of action and
    even though individuals still must sue for violations of
    regulations? The regulations contain a similar ambiguity.
    Just one of the relevant regulations explicitly creates
    liability for entities on whose behalf calls are made, 47

7

> C.F.R. § 64.1200(d)(3), while the others concern entities who make or initiate calls, see, e.g., id. § 64.1200(d)(1), (d)(6).

Id. at 465. The court observed that this ambiguity has resulted in courts announcing a variety of different measures for determining whether a third party acts on behalf of an entity and that this lack of uniformity "heightens the risk that individuals and companies will be subject to decisions pointing in different directions." Id. at 466.

Concluding that "[t]he answers to these questions implicate the FCC's statutory authority to interpret the Act, to say nothing of its own regulations," the Sixth Circuit invited the FCC to file an amicus brief offering its views on the case. In its brief, the FCC "made clear that a person can be liable for calls made on its behalf even if the entity does not directly place those calls" and that, "[i]n those circumstances, the person or entity is properly held to have 'initiated' the call within the meaning of the statute and the Commission's regulations." Brief for the FCC and the United States as Amici Curiae, No. 09-4525, 2010 WL 7325986, at *9-10 (Oct. 15, 2010). The FCC also argued that "although § 227(c)(5) may incorporate agency principles, there are compelling reasons to conclude that it does not incorporate principles of state agency law." Id. (emphasis in original). Before it could offer further

MEY V. MONITRONICS INT'L INC. ET AL                     5:11CV90

MEMORANDUM OPINION AND ORDER

interpretation, however, the FCC argued that a referral under the primary jurisdiction doctrine would be necessary.

The Sixth Circuit agreed that a referral to the FCC under the doctrine of primary jurisdiction was proper because it would advance regulatory uniformity and answer a question within the agency's discretion and technical expertise. Charvat, 630 F.3d at 466, 467 (citing In re StarNet, Inc., 355 F.3d 634, 639 (7th Cir. 2004) ("Only the FCC can disambiguate the word[s] [on behalf of]; all we could do would be to make an educated guess.")) Accordingly, the Sixth Circuit referred the case to the FCC, which, on April 4, 2011, issued a public notice seeking comment on the matter. Public Notice, CG Docket No. 11-50, 26 F.C.C.R. 5040 (Apr. 4, 2011).

C.    The FCC's Declaratory Ruling

On May 9, 2013, the FCC issued its Declaratory Ruling as to the scope of "on behalf of" liability under the TCPA. The FCC stated that "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." FCC Declaratory Ruling, ¶ 1. The FCC, however, made plain that "on behalf of" liability does not require a formal

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

<u>MEMORANDUM OPINION AND ORDER</u>

agency relationship. <u>Id.</u> at ¶ 28. Instead, a plaintiff proceeding under 47 U.S.C. § 227(c) could also use principles of ratification and apparent authority[1] to establish the seller's vicarious liability for the illegal acts of a third-party telemarketer. <u>Id.</u> Armed with the FCC's guidance, the Court turns to the pending motions.

## III.

Applying the FCC's Declaratory Ruling, it is patently clear that Mey, the non-movant, has met her burden at summary judgment and adduced more than a scintilla of evidence that VMS acted "on behalf of" Monitronics and UTC, exposing them to potential liability under 47 U.S.C. § 227(c). Fundamentally, both entities have agreements with VMS that enable it to hold itself out as an "authorized dealer" of Monitronics' and UTC's products. <u>See</u> (Dkt. Nos. 103-3 at 16; 103-9; 103-4). Drawing all permissible inference in Mey's favor, that fact alone could lead a reasonable finder of fact to conclude that UTC and Monitronics cloaked VMS with the

---

[1]     As explained in the Declaratory Ruling, "[s]uch '[a]pparent authority holds a principal accountable for the results of a third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and traceable to a manifestation of the principal." FCC Declaratory Ruling, ¶ 34 (quoting Restatement Third of Agency § 2.03, cmt. c).

MEY V. MONITRONICS INT'L INC. ET AL                     5:11CV90

MEMORANDUM OPINION AND ORDER

apparent authority to act on their behalf, thus exposing them to liability under § 227(c).

Nonetheless, UTC and Monitronics attempt to persuade the Court that the Declaratory Ruling somehow exceeds the FCC's power to interpret the TCPA. Alternatively, they argue that UTC and Monitronics are not subject to TCPA liability because they are "manufacturers" and not "sellers," and thus are not entities that are subject to liability under § 227(c). The Court will briefly address each argument in turn.

First, as to the objection that the Declaratory Ruling somehow exceeds the FCC's authority to interpret the TCPA, it is important to recall that in Charvat, 630 F.3d at 466, the Sixth Circuit concluded that the phrase "on behalf of" is ambiguous. See also In re StarNet, Inc., 355 F.3d at 639. Alternatively stated, the Sixth Circuit concluded that Congress has not "directly spoken to the precise question at issue." Chamber of Commerce of U.S. v. N.L.R.B., 721 F.3d 152 (4th Cir. 2013) (quoting Chevron, U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)). Thus, "the question for the court is whether the FCC's answer is based on a permissible construction of the" TCPA. City of Arlington, Tex. v. F.C.C., 133 S. Ct. 1863, 1868 (2013) (quoting Chevron, 467 U.S. at 843). The defendants have pointed to nothing

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

to suggest the Declaratory Ruling is based on an impermissible construction of the TCPA. Indeed, as "Congress is understood to legislate against a background of common-law adjudicatory principles," Astoria Fed. Sav. & Loan Ass'n. v. Solimino, 501 U.S. 104, 108 (1991), the FCC's conclusion that "on behalf of" liability embraces federal common law principles of agency is quite sensible. See also Meyer v. Holley, 537 U.S. 280, 285 (2003) ("when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules"). Furthermore, "[t]he apparent authority theory has long been the settled rule in the federal system," Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 567 (1982), so there is no reason to conclude that the inclusion of that theory of vicarious liability pushes the Declaratory Ruling beyond the pale of the FCC's broad authority to interpret the TCPA. See Charvat, 630 F.3d at 467 (the FCC is the agency granted interpretative authority over the TCPA).

As to the second argument, Monitronics and UTC cannot evade TCPA liability simply by protesting that, while VMS may be a "telemarketer" and therefore subject to TCPA liability, they are "manufacturers" - not "sellers" - and thus immune from liability

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

stemming from any wrongs that VMS allegedly perpetrated on their behalf. Although ignored by the defendants, the FCC has not left the term "seller" undefined. Section 64.1200(f)(9) of Title 47 of the Code of Federal Regulations states, "The term **seller** means the person or entity **on whose behalf** a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Id. (emphasis added). In other words, the determination of whether an entity is a "seller" turns on whether a telephone solicitation is made on its behalf. Dish Network, L.L.C., 667 F. Supp. 2d at 962-63 ("The FCC Rule . . . defines the seller as the person 'on whose behalf' a telephone solicitation is made."). At bottom, the argument cannot withstand a plain reading of the FCC's Rules and does not persuade the Court that summary judgment is appropriate.

## IV.

The Court notes that there is an alternative ground on which to base its denial of Monitronics and UTC's motions for partial summary judgment. Citing F. R. Civ. P. 56(d), Mey argues that the Court's limited discovery order of November 18, 2011 (dkt. no. 68) prevented her from discovering facts essential to justify her

13

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

opposition to the defendants' motions on a theory of ratification, and the Court should therefore deny those motions.

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it . . . ." Importantly, the Fourth Circuit recently emphasized the necessity of fulsome discovery prior to the granting of summary judgment. See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore, — F.3d —, 2013 WL 3336884 (4th Cir. July 3, 2013) ("A district court therefore must refuse summary judgment where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.") (internal quotations omitted).

Here, Mey has submitted an affidavit in which her attorney states that, due to the limited scope of discovery permitted by the Court, she was unable to obtain information related to the ratification theory of vicarious liability. For example, the Court precluded discovery on "[w]hat actions, if any, Defendants take if consumers who have placed their telephone numbers on any state or federal 'Do Not Call' lists file a verbal or written complaint with Defendant or any of its authorized dealers or authorized marketers

14

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

about being contacted by Defendants or anyone purporting to be an authorized dealer or authorized marketer." (Dkt. No. 164-1 at 5). As Mey points out, such information is highly germane to the issue of whether Monitronics or VMS ratified the alleged violations of VMS. See Declaratory Ruling, ¶ 46 ("Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."). Accordingly, as Mey has offered specific reasons why she could not present facts to oppose the motions for partial summary judgment, the Court concludes that denial of the pending motions is warranted. See also Perry v. AGCO Corp., No. WDQ-12-2043, 2013 WL 2902800 (D.Md. June 12, 2013) ("Sufficient time for discovery is 'considered especially important when the relevant facts are exclusively in the control of the opposing party.'") (quoting Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002)).

MEY V. MONITRONICS INT'L INC. ET AL                    5:11CV90

MEMORANDUM OPINION AND ORDER

V.

For the reasons stated, the Court:

(1)  **DENIES** the pending motions for partial summary judgment (dkt. nos. 93 and 95); and

(2)  **CANCELS** the oral argument previously scheduled for Thursday, August 15, 2013 at 9:30 A.M.; and

(3)  **SCHEDULES** a **Status Conference** for **Thursday, August 15, 2013 at 10:00 A.M.** The parties may participate in that status conference by telephone. If the status conference is to be by telephone, the Court directs lead counsel for the plaintiff to arrange the conference call and provide dial-in information to all parties and the Court

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: August 14, 2013

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE